[No. 56509–1.   En Banc.   April 12, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ERNEST H. ZIEGLER, *Petitioner.*

534

*Thomas D. Koch* and *William C. Butigan,* for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

.DORE, J.—Ernest Ziegler appeals his conviction for first degree statutory rape alleging, *inter alia,* that the trial court erred in admitting laboratory tests as business records. We hold that laboratory reports contained in the medical files of a physician, when the physician ordered the laboratory test and relied upon the test results in treating the patient, constitute part of the business records of the physician admissible into evidence under the Uniform Business Records as Evidence Act (hereinafter UBRA), RCW 5.45.020. We affirm and remand for resentencing.

FACTS

In April 1983, Ernest Ziegler and his wife, Rebecca, experienced marital problems and began to sleep apart. Subsequently, their 4–year–old daughter, J, occasionally

slept with her father. In November 1984, J told her mother that someone had been touching her "private place." When Rebecca asked J who had touched her, J initially refused to say stating, "'No, I can't. I can't tell because,' she said, 'I promised dad. I can't.'" Report of Proceedings, at 35. Rebecca then asked J who she had promised. J replied, "'I don't know, Scotty or Jason.'" Report of Proceedings, at 101. Scotty (5 years old) and Jason (13 years old) were neighborhood children. Rebecca did not press J for further details.

The following Monday, Rebecca went to work and left J at home in the care of Ziegler. When Rebecca returned home, Ziegler was working outside and J was alone in the house. Rebecca asked J how her day went and J replied, "'It happened again.'" Report of Proceedings, at 106. Immediately thereafter Ziegler came to the window and asked J if she wanted to help him outside in the barn. J asked her mother to accompany her to the barn. While at the barn, J got in Ziegler's way and he yelled at her. J walked over to Rebecca and said, "'Mama, he's the one that hurts me like that.'" Report of Proceedings, at 108. Later that week, Rebecca and J moved out of the house. Shortly thereafter, Dr. Bishop of Snohomish Family Medical Center examined J. In January 1985, Rebecca filed for divorce. The divorce was final in December 1985.

On August 4, 1986, the State charged Ziegler with first degree statutory rape occurring sometime between July 1983 and November 1984. Clerk's Papers, at 268. During trial, J testified to six identifiable sexual encounters with her father and discussed others in more general terms. J testified that these encounters occurred between her fourth and fifth birthdays (February 1983 and February 1984). She also testified to one identifiable event which occurred when she was 5 years old and attending kindergarten, which would place the event sometime after September 1984. J further testified to sexual contact during a hunting trip with Ziegler. Other testimony established that the

hunting trip took place in October 1984. Dr. Bradley Gerrish, a partner of Dr. Bishop's at Snohomish Family Medical Center, testified from J's medical file that a laboratory report showed that J had contracted Chlamydia, a sexually transmitted disease. The trial court, over defense counsel's objection, admitted the test results into evidence.

Prior to sending the case to the jury, the State amended the information to include a charge of indecent liberties. Report of Proceedings, at 364–65. The jury convicted Ziegler of first degree statutory rape and indecent liberties. The trial court sentenced Ziegler to 42 months. On appeal, the Court of Appeals, Division One, affirmed the statutory rape conviction, but reversed and dismissed the indecent liberties conviction. The case was remanded for resentencing. The State conceded that its midtrial amendment of the information was error. *See State v. Pelkey,* 109 Wn.2d 484, 745 P.2d 854 (1987).

Ziegler appealed his statutory rape conviction alleging that the trial court erred in admitting the laboratory results as business records, prosecutorial misconduct, and error by the Court of Appeals in refusing to consider additional evidence under RAP 9.11(a).

ADMISSIBILITY OF LABORATORY TEST RESULTS

At the time of trial, Dr. Bishop was unavailable to testify. The State called Dr. Gerrish, Dr. Bishop's partner at Snohomish Family Medical Center. The doctors maintained common medical files for patients of the partnership. Dr. Gerrish testified that he had examined J in May 1983 and diagnosed her as having vaginitis. Thereafter Dr. Bishop served as the child's treating physician. Using the common medical file, Dr. Gerrish testified regarding Dr. Bishop's examinations of J. The medical record indicated that on November 16, 1984, Dr. Bishop diagnosed J as having vaginitis. A vaginal smear was taken, and a gonorrhea culture was prepared. The gonorrhea culture was analyzed by Dr. Bishop in his office, and the vaginal smear was transferred

to a prepared slide and sent to Cooperative Medical Laboratory to be analyzed for Chlamydia.

Laying a foundation for the admission of the test results from the lab, Dr. Gerrish testified that his clinic consistently used the lab, that the clinic routinely relied upon test results obtained from the lab, and he explained the lab's method of testing for Chlamydia. Dr. Gerrish testified that the lab found that J tested positive for Chlamydia. The medical record indicated that Dr. Bishop took a second smear for Chlamydia testing during a February 1985 examination of the child. Dr. Gerrish testified that the latest lab report was negative as to Chlamydia.

Following Dr. Gerrish's testimony, the State moved to admit the lab reports into evidence under the UBRA, RCW 5.45.020, and *State v. Sellers,* 39 Wn. App. 799, 695 P.2d 1014, *review denied,* 103 Wn.2d 1036 (1985). Defense counsel objected on the grounds that the reports did not fall under the business records exception to the hearsay rule and that no one from Cooperative Medical Laboratory testified regarding the lab's testing procedures and handling of the particular slide. The trial court, noting that Dr. Gerrish was familiar with the lab and his clinic regularly relied upon the lab's work when treating patients, admitted the lab reports into evidence.

On appeal, Ziegler asserts that the trial court erred in permitting Dr. Gerrish to testify regarding the Chlamydia test results and in admitting the reports into evidence as part of the business records of Snohomish Family Medical Center. According to Ziegler, the lab reports constitute the business records of Cooperative Medical Laboratory, and the State failed to lay a proper foundation for their admission. We reject defendant's contentions.

■■ The UBRA, RCW 5.45.020,[1] makes evidence that would otherwise be hearsay competent testimony. The

---

[1]RCW 5.45.020 provides: "A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the

UBRA contemplates that business records are presumptively reliable if made in the regular course of business and there was no apparent motive to falsify. *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965), *appeal dismissed, cert. denied,* 384 U.S. 267 (1966). The UBRA contains five requirements for admissibility designed to ensure reliability. To be admissible in evidence a business record must (1) be in record form, (2) be of an act, condition or event, (3) be made in the regular course of business, (4) be made at or near the time of the act, condition or event, and (5) the court must be satisfied that the sources of information, method, and time of preparation justify the admittance of the evidence. *State v. Kreck,* 86 Wn.2d 112, 118–19, 542 P.2d 782 (1975); *Tennant v. Roys,* 44 Wn. App. 305, 312, 722 P.2d 848 (1986).

Discussing the application of the UBRA to medical records, this court stated

> As applied to hospital records, compliance with the act obviates the necessity, expense, inconvenience, and sometimes impossibility of calling as witnesses the attendants, nurses, physicians, X ray technicians, laboratory and other hospital employees who collaborated to make the hospital record of the patient. It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation.

(Citation omitted.) *Cantrill v. American Mail Line, Ltd.,* 42 Wn.2d 590, 608, 257 P.2d 179 (1953). The trial judge's decision to admit or exclude business records is given great weight and will not be reversed unless there has been a manifest abuse of discretion. *Cantrill,* 42 Wn.2d at 608; *State v. Barringer,* 32 Wn. App. 882, 885, 650 P.2d 1129 (1982).

The trial court did not err in finding that the lab reports met the requirements for admissibility under the UBRA. "A practicing physician's records, made in the regular

---

regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

course of business, properly identified and otherwise relevant, constitute competent evidence of a condition therein recorded." *State v. Sellers,* 39 Wn. App. 799, 806, 695 P.2d 1014, *review denied,* 103 Wn.2d 1036 (1985). The facts in *Sellers* are nearly identical to those of the present case.

In *Sellers,* a person was shot but no body was found. *Sellers,* 39 Wn. App. at 800. The police suspected that the defendant had killed his wife and charged him with second degree murder. The police obtained a bloodstained shirt worn by the defendant on the day of the shooting. *Sellers,* 39 Wn. App. at 801. The blood type of defendant's wife matched that of the blood found on the defendant's shirt. *Sellers,* 39 Wn. App. at 805–06. The defendant was convicted of second degree murder.

Appealing his conviction, the defendant asserted that the trial court erred in admitting a lab report of his wife's blood type, contained in her physician's records, without testimony of a supervisor or the individual who performed the blood test. The Court of Appeals rejected the defendant's claim, stating

> We find no merit in Sellers' next contention, that a lab report showing Pamela's blood type was inadmissible because neither the technician who had done the tests nor his supervisor was called to authenticate it. *The report was part of her physician's file and was identified by him.* It was admitted as a business record under RCW 5.45.020. *The statute does not require that the record be made by the person performing the lab test, but only that it was made in the regular course of business under circumstances which the court finds makes it trustworthy. A practicing physician's records, made in the regular course of business, properly identified and otherwise relevant, constitute competent evidence of a condition therein recorded.* The blood tests were requested and used by Pamela's physician in his treatment of her for two pregnancies and other health matters during her 8 years as his patient. This is very convincing evidence of their trustworthiness. The report was properly admitted.

(Footnote and citations omitted. Italics ours.) *Sellers,* 39 Wn. App. at 806–07. We hold that *Sellers* controls.

Similar to the situation in *Sellers,* J's treating physician ordered the Chlamydia tests and relied upon the test

results in his treatment of the child. The record was in the custody of Snohomish Family Medical Center as part of J's medical file. Dr. Gerrish testified regarding his familiarity with the laboratory and its testing procedures. The trial court found the test results admissible as business records because of Dr. Gerrish's knowledge of the lab's operations and his clinic's reliance upon the lab's test results in treating patients. We hold that the trial court did not err in admitting the lab reports as part of the business records of Snohomish Family Medical Center.

## PROSECUTORIAL MISCONDUCT

Ziegler contends the prosecutor's closing argument consisted of several improper remarks which effectively denied Ziegler his constitutional right to a fair trial. Defense counsel objected twice during the prosecutor's closing argument; however, he did not object to the remarks now claimed as error. The Court of Appeals rejected Ziegler's claim finding that, when read in context, the prosecutor's statements did not constitute misconduct and that its conclusion was supported by defense counsel's failure to object to the prosecutor's argument on that ground. *See State v. Papadopoulos,* 34 Wn. App. 397, 400, 662 P.2d 59, *review denied,* 100 Wn.2d 1003 (1983).

■ Absent an objection by defense counsel to a prosecutor's remarks, the issue of prosecutorial misconduct cannot be raised on appeal unless the misconduct is "so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct." *State v. Belgarde,* 110 Wn.2d 504, 507, 755 P.2d 174 (1988); *State v. Dunaway,* 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160 (1987). As previously noted, defense counsel failed to object to the remarks now alleged as error. Reading the record as a whole, it is clear that the prosecutor's remarks were not so flagrant that curative instructions could not have obviated any prejudice created. We find no prosecutorial misconduct.

## CONSIDERATION OF ADDITIONAL EVIDENCE
## ON APPEAL

Ziegler asserts that the Court of Appeals erred in refusing to consider additional evidence on appeal. The evidence offered consisted of medical articles published after trial, a letter from Ziegler's physician, and portions of Ziegler's medical record.

■ Under RAP 9.11(a), additional evidence may be taken by an appellate court if the following criteria are met:

> The appellate court may direct that additional evidence be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

The appellate court will accept new evidence only if all six conditions are met. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 640, 762 P.2d 1141 (1988).

The Court of Appeals, after reviewing the additional evidence, stated that although the medical articles were not available until after trial, Ziegler's medical record and his physician were available prior to trial. Ziegler made no attempt to enter that evidence at trial and did not assign error to any refusal by the trial court to accept that evidence. The Court of Appeals held that the petitioner failed to meet the requirements of RAP 9.11(a), and the court refused to consider the evidence. We agree.

### CONCLUSION

We affirm Ziegler's conviction of statutory rape. The trial court properly determined that the source of the information, method, and time of preparation were such as to justify the report's admission in evidence under the business records statute. We hold that the laboratory report was properly admitted.

We find no prosecutorial misconduct, and we further hold that the defendant failed to produce new evidence under RAP 9.11(a).

We affirm and remand for resentencing.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied June 14, 1990.