IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31762-5-III |
| | ) | Consolidated with |
| Respondent, | ) | No. 31763-3-III |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD EUGENE CORNWELL, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — A jury found Richard E. Cornwell, Jr. guilty of delivery of a controlled substance, methamphetamine, within 1,000 feet of the perimeter of a school grounds; possession of a controlled substance, heroin, with intent to deliver within 1,000 feet of the perimeter of a school grounds; possession of a controlled substance, methamphetamine, with intent to deliver within 1,000 feet of the perimeter of a school grounds while armed with a firearm; possession of controlled substance, dihydrocodeine, with intent to deliver within 1,000 feet of the perimeter of a school grounds while armed with a firearm; possession of a controlled substance, methadone, with intent to deliver within 1,000 feet of the perimeter of a school grounds while armed with a firearm; use of drug paraphernalia; second degree possession of stolen property; two counts of possession of a stolen firearm; possession of an unlawful firearm, and first degree trafficking in stolen property. After the jury read its verdict, Mr. Cornwell bolted out of the courtroom. He later pleaded guilty to attempted first degree escape. Mr.

Cornwell appealed both cases. This court consolidated his appeals. Mr. Cornwell contends (1) instructional error deprived Mr. Cornwell of his due process rights, (2) several of the offenses encompass the "same criminal conduct" for charging and sentencing purposes, (3) prosecutorial misconduct, (4) insufficient evidence to support the trafficking in stolen property and both possession of a stolen firearm convictions, and (5) ineffective assistance of counsel. In his pro se statement of additional grounds for review, Mr. Cornwell raises eight assignments of error mostly paralleling appellate counsel's arguments. Neither appellate counsel nor Mr. Cornwell, pro se, raise issues relating to the escape conviction; accordingly, we dismiss that appeal (cause no. 31762-5-III) as abandoned. *See Mueller v. Miller*, 82 Wn. App. 236, 252-53, 917 P.2d 604 (1996) (dismissal appropriate of consolidated appeal when no relief can be granted in the consolidated matter). We affirm.

## FACTS

Walla Walla Police Department detectives arranged for a confidential informant (CI), who had purchased narcotics from Mr. Cornwell before, to purchase controlled substances from him again at Mr. Cornwell's home. The CI purchased $40 worth of methamphetamine while in the house. The CI observed Mr. Cornwell's garage was empty. Based on this purchase, officers obtained a search warrant for the home.

Upon searching the home three days later, detectives found heroin, methamphetamine, methadone, and dihydrocodeinone in a safe. Detectives located a short-barreled shotgun, a .270 Savage rifle, an AR-10 rifle and case, an antique

2

Japanese rifle, and a Winchester shotgun. Jack McCaw identified the Japanese rifle and the Winchester shotgun as items taken from his home in September 2012. Smoking pipes with drug residue were located in a dresser in the master bedroom.

Detectives observed the once empty garage was now very full with little room to walk through. In the garage, detectives located scales, plastic baggies, and a loaded syringe. Additionally, they located items reported taken in burglaries around the area, including televisions, power tools, other electronic items, several compound bows, a sword, a grandfather clock, a tool chest, and bicycles.

Detectives obtained a second search warrant for an outbuilding, finding a stolen car and other stolen property. In all, detectives seized such a large quantity of items that it took two U-Haul trucks to remove the property.

When detectives informed Mr. Cornwell they discovered drugs and stolen property, he admitted ownership of the heroin and methamphetamine found inside the house; he admitted the property was his, but that he had bought it. He denied knowing the property was stolen, but added "you can assume anything." Report of Proceedings (RP) at 324. Later, when a detective asked if Mr. Cornwell was trading drugs for the stolen items, he admitted he was and that "I just like to help people out." RP at 323.

The State charged Mr. Cornwell with delivery of methamphetamine within 1,000 feet of school grounds; four counts of possession with intent to deliver controlled substances within 1,000 feet of school grounds, use of drug paraphernalia, first degree possession of stolen property, two counts of possession of a stolen firearm (Winchester

3

shotgun and Japanese rifle), possession of an unlawful firearm (short-barreled

shotgun), and first degree trafficking in stolen property. On the four possession with

intent to deliver charges, the information states Mr. Cornwell "did knowingly and

unlawfully possess with intent to deliver." Clerk's Papers (CP) at 52-53.

The matter proceeded to a jury trial. Defense counsel did not object to the

court's jury instructions. The to-convict jury instruction relating to the four possession

with intent to deliver charges state, "the defendant possessed the substance with intent

to deliver." CP at 73-76.

The prosecuting attorney made the following statements during closing

argument:

> . . . . If all we had here was perhaps a couple of items,
> maybe the two firearms that belonged to Mr. McCaw and
> those were found, identified and returned to Mr. McCaw
> there might be some difficulty as to whether or not Mr.
> Cornwell knew that those firearms were stolen, okay?
> Maybe somebody gave them to him as a gift or traded for
> controlled substances or other property that he legitimately
> had, you know, maybe one could wonder whether or not he
> knew they were stolen.
> But when you have the quantity, the mass quantity
> that we had here in this house, that belonged to more than a
> handful of victims and it was a multitude of items; a garage
> full, in the house, a grandfather clock and other things that
> would have sentimental value. The documents belonging to
> the Carrillo family. You know, why would Mr. Cornwell have
> in his residence citizen-citizenship paperwork, passport
> paperwork belonging to a complete stranger?

Report of Proceedings (RP) at 441-42. Later, during rebuttal, the

prosecutor stated:

4

> .... He had what we know is a lot of stolen property and he admitted to having -- knowing that some of it was stolen. He admits to buying some of that property.
> You decide whether or not we have to have admission from him, a statement from him that says he knew all of that property was stolen. If you have to have that from an individual who was engaging in this activity designates consolidated cases as much as Mr. Cornwell was, if that's reasonable.

RP at 469.

The jury found Mr. Cornwell guilty as charged. The court calculated Mr. Cornwell's offender score at nine and sentenced him to total confinement of 124 months, including sentence enhancements. He appealed.

ANALYSIS

A. Instructions

The issue is whether Mr. Cornwell was denied a fair trial under due process principles based on instructional error. He contends a discrepancy exists between the information and the to-convict jury instructions relating to the four possession with intent to deliver charges because the term, "knowingly and unlawfully possess" was included in the information but not in the jury instructions. He argues "knowingly and unlawfully possess," therefore, became essential elements of the crime.

Initially, we note this issue is raised for the first time on appeal. But, the failure to include an essential element of a crime in a to-convict instruction is an error that can be raised for the first time on appeal. *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

5

We review alleged errors of law in jury instructions de novo. *State v. Hayward*, 152 Wn. App. 632, 641, 217 P.3d 354 (2009). "Due process requires the State to bear the 'burden of persuasion beyond a reasonable doubt of every essential element of a crime.'" *State v. Deal*, 128 Wn.2d 693, 698, 911 P.2d 996 (1996) (quoting *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994)). Thus, it is constitutional and reversible error for the State to be relieved of its burden to prove every essential element of a criminal offense beyond a reasonable doubt. *Hayward*, 152 Wn. App. at 641-42.

Mr. Cornwell's argument meshes the application of the essential elements rule to the charging document and to the to-convict instruction. There are underlying purposes for including an essential element in a charging document and including such element in a to-convict instruction.

The rule that a charging document must include all essential elements of a crime is grounded in the constitutional requirement that defendants be informed of the nature and cause of the accusation against them. *State v. Taylor*, 140 Wn.2d 229, 236, 996 P.2d 571 (2000). Thus, "[t]he 'primary goal' of the 'essential elements rule' is to give a defendant notice of the nature of the crime charged so the defendant would be able to prepare to defend against the charge." *Id.* (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991)). The "'to convict' instruction must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence." *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917

6

(1997)). "It cannot be said that a defendant has had a fair trial if the jury must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved." *Id.*

To convict Mr. Cornwell of unlawful possession of a controlled substance with intent to deliver, the State had to prove beyond a reasonable doubt that he (1) unlawfully possessed (2) with intent to deliver (3) a controlled substance. RCW 69.50.401(1).

Here, the charging document states Mr. Cornwell "did knowingly and unlawfully possess with intent to deliver." CP at 52-53. While the information adds the word "knowingly" that is not contained in RCW 69.50.401(1) this word is inherent with the required mental state of intent. The mens rea was not changed. *See Bishop v. City of Spokane,* 142 Wn. App. 165, 171, 173 P.3d 318 (2007) ("The change in wording (of knowing to willful) does not 'plainly' indicate a change in the mens rea.). Thus, this language in the information is sufficient to notify Mr. Cornwell of the nature and cause of the accusation against them. *Taylor,* 140 Wn.2d at 229.

Turning to the to-convict instructions, they state to be guilty the jury must find "the defendant possessed the substance with the intent to deliver." CP at 73-76. The jury was further instructed, "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." CP at 98. Further still, the jury was instructed, "A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact,

7

circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of to the crime." CP at 99. Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law. *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). In other words, each instruction is considered in the context of the "instructions as a whole." *Id.* The instructions here meet this standard. The "to convict" instructions contained all the essential elements of possession with intent to deliver as set forth in RCW 69.50.401(1). The additional instructions further clarified the term "intent" and "knowingly." The jury was not left to "guess at the meaning of an essential element of a crime" or to "assume that an essential element need not be proved." *Smith*, 131 Wn.2d at 263.

Based on the above, neither the charging document nor the information violate the essential elements rule. The State was not relieved of its burden to prove every essential element of possession with intent to deliver beyond a reasonable doubt. *Hayward*, 152 Wn. App. at 641-42. Thus, no constitutional or reversible error is present. As such, we do not reach Mr. Cornwell's double jeopardy argument as to whether the convictions should be dismissed with prejudice.

B. Same Criminal Conduct

The issue is whether Mr. Cornwell's four possession of a controlled substance with intent to deliver charges encompass the same criminal conduct. He contends, for

8

the first time on appeal, these offenses have the same criminal intent, were committed at the same time and place, and involve the same victim.

Mr. Cornwell's argument is foreclosed by *State v. Nitsch*, 100 Wn. App. 512, 997 P.2d 1000 (2000). There, the defendant attempted to argue for the first time on appeal that the two crimes to which he had pleaded guilty constituted the same criminal conduct. *Id.* at 517-18. The court rejected the attempt, noting the same criminal conduct determination is, in part, a factual determination by the trial court and also is, in part, a matter of judicial discretion. *Id.* at 523-24. We cannot know how the trial court might have exercised its discretion in deciding the critical factual inquiries involved in determining a same criminal conduct inquiry or if the trial court would have would have exercised its discretion favorably to the defendant. *Id.* A trial court's failure to sua sponte determine whether current offenses constitute the same criminal conduct is not a challenge reviewable for the first time on appeal.

Nevertheless, crimes are considered the same criminal conduct if they require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a). Here, the parties dispute solely whether the offenses shared the same criminal intent. Whether crimes share the same criminal intent depends on "'the extent to which the criminal intent, objectively viewed, changed from one crime to the next. . . . This, in turn, can be measured in part by whether one crime furthered the other.'" *State v. Williams*, 135 Wn.2d 365, 368, 957 P.2d 216 (1998) (quoting *State v. Vike*, 125 Wn.2d 407, 411, 885 P.2d 824 (1994)). We look to the

9

record to find support about whether the crimes constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 535, 295 P.3d 219 (2013). And, this court construes RCW 9.94A.589(1)(a) narrowly to disallow most assertions of same criminal conduct. *Id.* at 540. A defendant bears the burden of establishing that multiple crimes constitute the same criminal conduct. *Id.* at 539.

Here, detectives found heroin, methamphetamine, methadone, and dihydrocodeinone in a safe inside Mr. Cornwell's home. They discovered a once empty garage was now filled with stolen property. When detectives questioned Mr. Cornwell about their discovery, he admitted he was trading drugs for property and stated he liked to "help people out." RP at 323. Based on the use of the plural word, "people" and the quickly-filled garage with stolen property, Mr. Cornwell did not intend to deliver the variety of drugs to a single purchaser. He dealt in high volume. The intent for multiple transactions demonstrates different criminal intent. Compare *Garza-Villarreal*, 123 Wn.2d at 50, where our Supreme Court found possession convictions encompassed same criminal conduct when the "State presented no evidence to establish Garza-Villarreal intended to deliver the heroin and cocaine in more than one transaction."

All elements must be met for multiple offenses to be considered the same criminal conduct. *Garza-Villarreal*, 123 Wn.2d at 47. Because all elements are not shown in Mr. Cornwell's case, his same criminal conduct arguments fail.

Alternatively, Mr. Cornwell contends the sentencing court should recalculate his offender score and resentence him based on the same criminal conduct argument set

10

forth above. Although a criminal defendant may challenge an offender score for the first time on appeal, a defendant waives that right when the alleged error is based on a factual dispute or trial court discretion. *Graciano*, 176 Wn.2d at 538-39. As discussed above, where a defendant is convicted of more than one crime, the trial court must make discretionary decisions in determining whether those crimes arose from the same criminal conduct. *Nitsch*, 100 Wn. App. at 523. Thus, by failing to raise the issue of same criminal conduct at sentencing, a defendant waives the right to argue that issue on appeal. *State v. Jackson*, 150 Wn. App. 877, 892, 209 P.3d 553 (2009). Because Mr. Cornwell did not argue at sentencing that his offenses constituted the same criminal conduct, he cannot raise this issue for the first time on appeal.

### C. Evidence Sufficiency

The issue is whether sufficient evidence exists to support Mr. Cornwell's two counts of possession of a stolen firearm (Winchester shotgun and Japanese rifle) and first degree trafficking in stolen property convictions. Mr. Cornwell contends the State failed to show knowledge that the guns were stolen and that Mr. Cornwell intended to traffic the stolen property.

We review the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. *State v.*

11

*Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing courts must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

*Possession of a Stolen Firearm.* A person commits possession of a stolen firearm when "he or she possesses, carries, delivers, sells, or is in control of a stolen firearm." RCW 9A.56.310(1). The definition of "possessing stolen property" under RCW 9A.56.140 applies to the crime of possessing a stolen firearm. RCW 9A.56.310(4). Under RCW 9A.56.140(1), "'[p]ossessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."

Mr. Cornwell first denied knowing the property located at his house, including the guns, was stolen, but added "you can assume anything." RP at 324. When a detective asked if Mr. Cornwell was trading drugs for the stolen items, he admitted he was explaining, "I just like to help people out." RP at 323. Viewing this evidence in the light most favorable to the State, any rational trier of fact could have found Mr. Cornwell knowingly possessed property that had been stolen, including the two firearms. RCW 9A.56.140(1). Thus, sufficient evidence supports these convictions.

12

*Trafficking in Stolen Property.* To convict Mr. Cornwell of first degree trafficking in stolen property, the State had to prove he "knowingly initiate[d], organize[d], plan[ned], finance[d], direct[ed], manage[d], or supervise[d] the theft of property for sale to others." RCW 9A.82.050(1).

As discussed above, the State presented evidence that Mr. Cornwell told detectives they could "assume anything." RP at 324. He further admitted to trading drugs for stolen property "to help people out." RP at 323. Mr. Cornwell was able to fill his garage with two truckloads of stolen items in the passage of three days. A few days before, his garage had been clean and uncluttered. Mr. Cornwell could not sustain this volume of trade over time if he was not also transferring or trafficking the items. Viewing this evidence in the light most favorable to the State, it is reasonable to infer Mr. Cornwell intended to transfer the items. Thus, sufficient evidence exists to support his first degree trafficking in stolen property conviction.

## D. Prosecutorial Misconduct

The issue is whether Mr. Cornwell was denied a fair trial based on prosecutorial misconduct. Mr. Cornwell contends, for the first time on appeal, the prosecutor committed misconduct by arguing during closing that the large quantity of known stolen property found at Mr. Cornwell's residence was relevant to whether he knew the Winchester shotgun and Japanese rifle were stolen.

Because Mr. Cornwell did not object at trial to this comment, our review is limited to determining whether, if there was misconduct, it was so flagrant and ill-intentioned

13

that no curative instructions could have obviated the prejudice the misconduct engendered. *State v. Ziegler*, 114 Wn.2d 533, 540, 789 P.2d 79 (1990). And we must reverse for prosecutorial misconduct when a substantial likelihood exists that the argument affected the jury verdict. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986). The defense bears the burden of proving such prejudice. *State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986).

Here, the prosecutor stated, "If all we had here was perhaps a couple of items, maybe the two firearms that belonged to Mr. McCaw and those were found, identified and returned to Mr. McCaw there might be some difficulty as to whether or not Mr. Cornwell knew that those firearms were stolen." RP at 441. The prosecutor continued, "He had what we know is a lot of stolen property and he admitted to having -- knowing that some of it was stolen. . . . You decide whether or not we have to have admission from him, a statement from him that says he knew all of that property was stolen." RP at 469.

A trier of fact is required to view "all" evidence presented at trial to determine whether the crime's essential elements have been proven beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. We defer to the fact-finder to resolve testimonial conflicts, weigh evidence, and choose between evidentiary inferences. *State v. Bryant*, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998). Based on these requirements, the prosecutor's comment that the jury should view all evidence in deciding whether Mr. Cornwell knew the firearms were stolen does not amount to misconduct and does not rise to the level

14

of a flagrant and ill-intentioned comment. Accordingly, we conclude Mr. Cornwell fails to establish prosecutorial misconduct.

### E. Ineffective Assistance of Counsel

The issue is whether Mr. Cornwell was denied effective assistance of counsel. He contends counsel was ineffective by failing to object to the jury instructions relating to the four possession with intent to deliver offenses, failing to object to the prosecutor's closing remarks, and failing to request a same criminal conduct analysis.

The Sixth Amendment to the United States Constitution declares the right to assistance of counsel in criminal prosecutions. The Washington Constitution grants an accused, in a criminal prosecution, the right to counsel. CONST. art. I, § 22. To effectuate the purpose behind the constitutional provisions, the accused is entitled to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We review ineffective assistance of counsel claims de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prove ineffective assistance, a defendant must show (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). We strongly presume defense counsel's performance was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To rebut this presumption, a defendant must show but for the deficient performance, the outcome of the trial would have been different by a reasonable probability. *Hendrickson*, 129 Wn.2d at 78. A

15

failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Id.* at 77-78.

Mr. Cornwell's deficient performance arguments have all been addressed, and rejected, above. He has failed to show any reversible instructional error, prosecutorial misconduct, or basis for a same criminal conduct finding to establish deficient performance. Thus, Mr. Cornwell's ineffective assistance of counsel claim fails. Therefore, we need not analyze the prejudice prong to ineffective assistance claims.

### F. Statement of Additional Grounds for Review

In his pro se statement of additional grounds for review (SAG), Mr. Cornwell alleges multiple reversible errors involving due process rights, prosecutorial misconduct, the right to the presumption of innocence, ineffective assistance of counsel, double jeopardy, evidentiary error, conflict of interest, and witness credibility. Several of these eight issues were raised, and adequately addressed, by Mr. Cornwell's appellate counsel. We, therefore, are not required to address them further. *See* RAP 10.10(a) (providing the purpose of an SAG is to "identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel"). The remaining issues involve the presumption of innocence, evidentiary error, conflict of interest, and witness credibility.

*Presumption of Innocence.* The presumption of innocence, although not articulated in the Constitution, "is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d

16

126 (1976). Mr. Cornwell claims he was denied this presumption and cites legal authority discussing, in general, the presumption of innocence, but fails to "inform the court of the nature and occurrence of [the] alleged errors" in his SAG. RAP 10.10(c). For this reason, it would be inappropriate for us to discuss this issue further.

*Evidentiary Error.* Next, Mr. Cornwell assigns error to "Evidence Certification From WSP Lab." He cites an evidence rule relating to test reports by experts, but again fails to "inform the court of the nature and occurrence of [the] alleged errors." RAP 10.10(c). Multiple lab reports exist in this case concerning the variety of controlled substances found in Mr. Cornwell's home. Without argument clarifying Mr. Cornwell's contention, we cannot analyze his contention.

*Conflict of Interest.* Mr. Cornwell next argues he was denied a fair trial based on conflict of interest because his defense attorney has two daughters that dated Mr. Cornwell's son. Mr. Cornwell claims he objected, but this court's record does not contain any evidence of a possible conflict of interest. If Mr. Cornwell has evidence outside this court's record, his argument would be best raised in a personal restraint petition (PRP). *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (the proper procedure for raising issues dependent on matters outside the record is a PRP).

*Witness Credibility.* Lastly, Mr. Cornwell contends the CI was not a credible witness. Information is sufficient to issue a warrant if (1) the information demonstrated first-hand knowledge of criminal activity, and (2) it was reasonable to consider the CI

17

credible. *State v. Jackson*, 102 Wn.2d 432, 435-38, 437, 688 P.2d 136 (1984). A CI is considered credible if the informant is not anonymous. Here, police knew the informant's identity. Moreover, the informant had made purchases from Mr. Cornwell in the past. In light of these facts, it was reasonable for the issuing judge to consider the CI credible.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

18