**FILED**
**JULY 2, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36799-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VERNON JOSEPH BOGAR, III, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Vernon Bogar III appeals after a jury found him guilty

of theft in the first degree, two counts of burglary in the second degree, and bail jumping.

His central contention is the trial court erred when it admitted a document by misapplying

the business record hearsay exception. The document, prepared by law enforcement and

not the witness, listed the items stolen and the values for each item. We agree the trial

court erred when it admitted the document. But we also conclude the error was harmless

and affirm.

FACTS

Theodore Strom IV and Robert Bogar[1] agreed to do a "quick lift" in early 2016. Report of Proceedings (RP) at 220. "Quick lift" is slang for stealing. Robert suggested they target the Cle Elum Fish Hatchery. The hatchery is owned by the Confederated Tribes and Bands of the Yakama Nation. At the time, Robert's brother Vernon worked at the hatchery and lived on the property.

For a one-third share of the proceeds, Vernon assisted his brother and Theodore by giving them the gate code and keys to enter the hatchery. Robert and Theodore went back a second time, and Vernon again assisted them for a one-third share of the proceeds.

Robert pawned some of the items he stole. Kittitas County Sheriff's Detective Andrea Blume learned of this from a law enforcement pawned items database. Detective Blume contacted Charles Strom, the hatchery's complex manager and asked if he had seen Robert Bogar. Charles said he had.

Charles then contacted his nephew, Theodore.[2] Theodore admitted the thefts to his uncle. Theodore later met with Detective Blume and confessed.

---

[1] Four men involved in this case—Theodore Strom, Charles Strom, Robert Bogar, and Vernon Bogar—share two different last names. For clarity, we refer to these four men by their first names.

[2] We infer Charles knew that his nephew and Robert were friends.

The State charged Theodore and Robert with various felonies. Each pleaded

guilty, although Theodore's cooperation with the State resulted in a much more favorable

plea deal.

By amended information, the State charged Vernon with theft in the first degree,

two counts of second degree burglary, obstructing law enforcement, and bail jumping. At

trial, the State called Theodore to establish Vernon's involvement in the crimes. It also

called Charles to establish what items were stolen and their values.

*Exhibit 27*

The State handed Charles a document prepared by law enforcement, which

contained a list of stolen items and their values. When the State offered the document,

Vernon objected. He argued lack of foundation, and said Charles did not create the

document. The trial court initially overruled the objection, but then reversed itself and

ruled the document inadmissible.

The State attempted to lay a better foundation and had Charles explain how the

information came to be on the list. Charles testified that the Yakama Nation provided the

hatchery with a current inventory list of all hatchery property, which showed the original

purchase price for each inventory item. He testified that a shop foreman used that list to

determine what items were stolen. Charles then reported what items were stolen to the

Yakama Nation, and the Yakama Nation then gave him current values for each item stolen. From there, Charles provided this information—items stolen and current values—to law enforcement and also to insurance.

The State asked Charles about the insurance claim. Charles testified the Yakama Nation submitted a $12,000 insurance claim, and—after the Yakama Nation recouped its $5,000 deductible—the hatchery received "barely" $5,000 to purchase tools.[3]

Ultimately, the trial court sustained Vernon's objection to exhibit 27 because Charles was not the "custodian of the records." RP at 154.

After a brief recess, the State tried again to admit the list of stolen items and values prepared by law enforcement. The State again had Charles explain how the hatchery used the Yakama Nation's inventory list to determine what items had been taken. The State

---

[3] RP at 150-51 sets out the following testimony:

[Charles:] Well, we learned that we had a $5,000 deductible and I think [the Yakama Nation] came up with like an estimated $12,000 of equipment that we turned in [as stolen]. And so that's what I learned—that we actually barely got the $5,000 worth of tools to replenish what was removed . . . .

. . . .

[State:] [A]fter paying the deductible, did you receive a settlement from the insurance company?

[Charles:] No, we just started replacing what we were allowed to with the remaining money.

[State:] And how much remaining money were you allowed?

[Charles:] I think it was barely 5, yep.

4

offered the Yakima Nation inventory list. Vernon objected, but the trial court overruled

the objection and admitted it as exhibit 30. The State reoffered exhibit 27. Vernon

asserted his former objection. This time the trial court overruled the objection and

admitted exhibit 27.

*Vernon's defense*

Vernon sought to discredit Theodore on the basis he received a generous plea deal

in exchange for his testimony. Vernon also sought to establish he had nothing to do with

the theft.

Vernon called his brother Robert to testify. Robert testified that Vernon had no

involvement in the thefts, that Robert remembered the outer gate's access code, and that

Robert and Theodore accessed the shop because the door was unlocked.

*Verdict and appeal*

The jury did not believe Robert's testimony. It found Vernon guilty of all charges

except obstructing law enforcement.

Vernon appealed.

No. 36799-1-III
*State v. Bogar*

SUMMARY OF ARGUMENTS

Vernon raises three arguments on appeal. He argues the trial court's admission of exhibit 27 violated his right under the confrontation clause because he could not cross-examine its author. He also argues the trial court abused its discretion when it misapplied the business record hearsay exception and admitted that document. Lastly, he argues he received ineffective assistance of counsel because his trial counsel asserted a general lack of foundation objection to exhibit 27 and should have argued that exhibit 27 was not a business record.

ANALYSIS

A.   CONFRONTATION RIGHT WAIVED

The Sixth Amendment to the United States Constitution affords the accused the right "to be confronted with the witnesses against him." Vernon argues the admission of exhibit 27 through Charles violated this right because he could not cross-examine the law enforcement officer who authored the document. We note Vernon did not assert this argument below.

Under RAP 2.5(a)(3), a defendant may raise for the first time on appeal a "manifest error affecting a constitutional right." In *State v. Burns*, 193 Wn.2d 190, 207-11, 438 P.3d 1183 (2019), the court discussed its inconsistent application of

6

RAP 2.5(a)(3) to unpreserved claims of confrontation clause errors. After reviewing

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314

(2009), *Burns* approved the analysis in *State v. O'Cain*, 169 Wn. App. 228, 279 P.3d 926

(2012). *Burns*, 193 Wn.2d at 210. *O'Cain* held that a defendant's failure to object on

confrontation grounds at trial results in a waiver of that argument on appeal. *Burns*, 193

Wn.2d at 210-11. *Burns* concluded, "Where a defendant does not object at trial, 'nothing

the trial court does or fails to do is a denial of the [confrontation] right, and if there is no

denial of a right, there is no error by the trial court, manifest or otherwise, that an

appellate court can review.'" *Id.* at 211 (quoting *State v. Fraser*, 170 Wn. App. 13, 25-

26, 282 P.3d 152 (2012)). Because Vernon did not object below on confrontation

grounds, there is no trial court error for us to review.

B.      ADMITTING EXHIBIT 27 WAS ERROR, BUT IT WAS NOT PREJUDICIAL

        Vernon argues the trial court improperly admitted exhibit 27 as a business record.

The State responds that exhibit 30, the hatchery's inventory list, was properly admitted

and provided a sufficient foundation for exhibit 27 because the latter was derived from

former.

*Error preservation*

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Generally, "when an error is raised based on admitting evidence, the adverse party must make 'a timely objection or motion to strike . . . [and] stat[e] the specific ground of objection, if the specific ground was not apparent from context.'" *City of Seattle v. Levesque*, __ Wn. App. 2d __, 460 P.3d 205, 210 (2020) (alterations in original) (quoting ER 103(a)(1)).

Vernon objected to exhibit 27 based on a lack of foundation—that Charles did not create it. This objection did not explicitly reference hearsay or the business records exception. Still, the trial court seemed to have considered the business records hearsay exception, at one point noting Charles was "not the custodian of the records." RP at 154. Because the trial court construed Vernon's objection to encompass the business records hearsay exception, we deem his objection sufficient and preserved.

*Business records hearsay exception*

The Uniform Business Records as Evidence Act (UBRA), chapter 5.45 RCW, "provides an exception for business records to the general hearsay rules." *State v. DeVries*, 149 Wn.2d 842, 847, 72 P.3d 748 (2003) (citing RCW 5.45.020). "A trial

court's decision to admit records under the act is reviewed for a manifest abuse of discretion." *Id*.

"The UBRA[4] . . . makes evidence that would otherwise be hearsay competent testimony." *State v. Ziegler*, 114 Wn.2d 533, 537, 789 P.2d 79 (1990). It "contemplates that business records are presumptively reliable if made in the regular course of business and there was no apparent motive to falsify." *Id*. at 538. "It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of his work or has supervision of its creation." *Cantrill v. Am. Mail Line Ltd.*, 42 Wn.2d 590, 608, 257 P.2d 179 (1953).

First, Charles was not a records custodian of exhibit 27. He neither created it, had custody of the record, nor supervised its creation. Second, the document was not prepared in the normal course of the hatchery's business. Third, we disagree with the State's argument that exhibit 30, which it contends was a business record of the hatchery,

---

[4] Under the UBRA,

A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020.

9

served as a sufficient basis for admitting exhibit 27.

Exhibit 27 contained important information not contained in exhibit 30. Exhibit 27 contained the *value* for each stolen item, whereas exhibit 30 contained the *original purchase price* for each item at the hatchery. Charles was unable to testify about the values of the stolen items and testified that someone from the Yakama Nation provided those values to him. Because the State needed to establish the value of the items instead of the original purchase price, exhibit 27 contained vital information absent from exhibit 30.[5]

For these three reasons, we conclude the trial court erred by admitting exhibit 27 under the business records hearsay exception.

*Lack of prejudice*

"An error in admitting evidence that does not result in prejudice to the defendant is not grounds for reversal." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120

---

[5] In the context of theft, "value" means "the market value of the property . . . at the time and in the approximate area of the criminal act." RCW 9A.56.010(21)(a). "'Market value' is the price that a well-informed buyer would pay to a well-informed seller when neither is obliged to enter into the transaction." *State v. Williams*, 199 Wn. App. 99, 105, 398 P.3d 1150 (2017). Evidence of retail price is relevant to establishing market value and may be sufficient to meet the State's burden of proof. *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012). But when a piece of property was purchased in the past and has been subject to normal use, retail price has less probative weight. *See State v. Morley*, 119 Wn. App. 939, 944, 83 P.3d 1023 (2004).

(1997). Evidentiary error is not prejudicial unless the outcome of the trial would have been materially affected had the error not occurred. *Id.*

Charles testified that the Yakama Nation submitted a $12,000 claim to its insurer for the stolen items. He further testified the hatchery received "barely" $5,000 after the Yakama Nation recouped its $5,000 deductible it paid. RP at 150. Therefore, according to Charles, the value of the stolen items was between the $12,000 claimed loss and the $10,000 received from insurance.

Theft in the first degree requires proof that the stolen property exceeds $5,000 in value. RCW 9A.56.030(1)(a). Had the trial court excluded exhibit 27, the jury still would have found that the value of the stolen items was between $10,000 and $12,000, far in excess of $5,000. We conclude that the trial court's evidentiary error was not prejudicial and is not grounds for reversal.

C.     NO INEFFECTIVE ASSISTANCE OF COUNSEL

Vernon contends his trial counsel violated his right to effective assistance when counsel failed to object to exhibit 27 on hearsay grounds.

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel."

*State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  This court reviews

"ineffective assistance of counsel claims de novo."  *Id*.

"A successful ineffective assistance of counsel claim requires the defendant to

show that counsel's performance was deficient and that the defendant was prejudiced by

the deficient performance."  *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d

1102 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984)).  This court "need not consider both prongs of *Strickland* . . . if a

petitioner fails on one."  *Id*. at 847.

Vernon argues if his trial counsel objected to exhibit 27 for hearsay instead of lack

of foundation, the trial court would not have admitted exhibit 27.  We disagree.  As we

mentioned before, the trial court did construe defense counsel's objection as requiring a

business records analysis and eventually admitted the exhibit nevertheless.

But even if the trial court construed defense counsel's objection narrowly, i.e.,

whether Charles had sufficient knowledge of exhibit 27 to testify about it, Vernon was

not prejudiced.  Had the trial court excluded exhibit 27, the unrefuted evidence was the

value of the stolen items was between $10,000 and $12,000, well in excess of $5,000.

We, therefore, reject Vernon's ineffective assistance of counsel arguments.

No. 36799-1-III
*State v. Bogar*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Siddoway, J.                                              Fearing, J.

13