IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 82927-1-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MARK DAVID GLENN, | |
| Appellant. | |

BOWMAN, J. — Mark David Glenn appeals his jury conviction for one count of second degree sexual misconduct with a minor. For the first time on appeal, he argues the State improperly elicited testimony in violation of the confrontation clause.[1] Glenn also claims that the trial court erred when it denied his motion for a mistrial and that he received ineffective assistance of counsel. We conclude that Glenn waived his challenge under the confrontation clause, that the trial court did not abuse its discretion by denying his motion for a mistrial, and that he fails to show ineffective assistance of counsel. We affirm.

FACTS

In 2019, 50-year-old Glenn worked as a contract nurse at Todd Beamer High School, where sophomores J.O., O.G., and L.C. were students. J.O. first met Glenn in early 2019 through her friend O.G., who often spent time in the nurse's office.

---

[1] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

Around March or April of 2019, J.O. visited the nurse's office with a headache. During the visit, Glenn stared at her chest, told her she was "hot," commented on how her "butt" looked, and asked her to lift her shirt without a medical reason. She refused. He then asked if she had a ride home. J.O. said yes and turned to leave the office. Glenn came up behind her, grabbed her by the hips, turned her around, pushed his hand underneath her clothes, and touched her vagina. J.O. froze for a moment then pushed him away, punched him in the face, and left. J.O. told no one about the assault.

In early September 2019, L.C. reported to the school that Glenn inappropriately touched her leg and made sexually suggestive comments. On October 2, 2019, O.G. reported to the high school resource officer, Federal Way Police Officer Ricardo Cuellar, that Glenn had made sexually suggestive comments and sexually abused him in early September, too. O.G. testified that the abuse included "flirtatious" encounters, inappropriate comments, sexually explicit text messages and photos, as well as an incident of sexual assault. Officer Cuellar asked O.G. if there were other students he should contact with similar concerns. O.G. told him he should contact J.O.

Officer Cuellar pulled J.O. out of class that same day and questioned her about Glenn. But J.O. denied any misconduct because she "didn't want [her] parents to know." Still, at the end of the school day, J.O. delivered a letter to Officer Cuellar disclosing Glenn's sexual comments to her but not the sexual assault. J.O. then participated in a child forensic interview. J.O. repeated the

2

same allegations in more detail but again did not disclose that Glenn touched her.

J.O. shared the details of the forensic interview with O.G and explained that she did not tell the interviewer that Glenn touched her. O.G. became upset. He said that Glenn also sexually abused him and insisted that "if [J.O.] didn't go tell them everything that he would."

On October 15, 2019, J.O. and O.G. went to see Officer Cuellar and the assistant principal. J.O. disclosed that Glenn had sexually assaulted her and gave a written statement. She then fully disclosed to her parents and participated in a second child forensic interview. She told the interviewer she decided to disclose the assault because O.G. " 'just started crying, like, broke down in front of me and asked me to tell the whole truth and everything because he didn't want to be alone in this situation.' "

The State charged Glenn with rape of a child in the third degree as to O.G., sexual misconduct with a minor in the second degree as to J.O., and two counts of communication with a minor for immoral purposes as to O.G. and L.C. The case went to trial in March 2021. But the jury could not reach a unanimous verdict, and the court declared a mistrial.

The court scheduled a new trial for May 2021. But only J.O. agreed to testify at the second trial. So the State amended the complaint, alleging one count of sexual misconduct with a minor in the second degree based on J.O.'s allegations.

Before trial, the State sought to introduce evidence of O.G.'s allegations against Glenn.[2] It asserted that the allegations were necessary to explain why Officer Cuellar first contacted J.O. and why "it took her several weeks to disclose all the facts of Mr. Glenn's misconduct." Glenn disagreed. He argued that since O.G. was not testifying, Glenn could not defend himself against the allegations. So the court asked Glenn how they could "put things into context for the jury without having the jury hear about that." Glenn objected to "anything related to allegations of sexual misconduct."

Ultimately, all agreed that Officer Cuellar could testify that " '[a]nother student expressed concerns about Mr. Glenn and encouraged [him] to reach out to [J.O.].' " Defense counsel stated, "I think that's as sanitized as it can be, Your Honor." The prosecutor further clarified:

> And then [J.O.] would be permitted to testify that a friend — it's something along the lines of, "A friend at school had asked her why she had to leave class." She explains to that friend, "I had to go do a forensic interview or give an interview about some sexual misconduct that happened to me." That friend insisted on details and himself shared that he had been the victim of sexual assault in the past, which led [J.O.] to be more comfortable sharing this ultimate detail, and when she provided those additional details, this friend insisted that she report it to an adult.

The court agreed that "[y]es, I think that works." Defense counsel did not object.

At trial, the prosecutor questioned Officer Cuellar about why he first approached J.O.:

> Q. Okay. Near in the beginning of that school year, in October of 2019, do you recall talking to a student who came to you and

---

[2] At the first trial, the court permitted O.G. to testify that Glenn assaulted him, that he directed Officer Cuellar to J.O., and that he urged J.O. to fully disclose Glenn's conduct. The court ruled the testimony was cross-admissible under ER 404(b) to show Glenn acted under a common scheme or plan.

disclosed that they had some concerns about the school nurse named Mark Glenn?

A.     Yes, sir.

. . . .

[PROSECUTOR]:  Do you remember the demeanor of this student when you were talking to them about this disclosure?

A.     They seemed a little embarrassed.

Q.     Okay.  Was the student — was this a serious conversation? Was there a concern from the student?

A.     It was a very serious conversation; there was concern.

Q.     And without telling us the details or what the other student said, did you ask that student if there were any other students at the school that you should talk to . . . about additional or different incidents?

A.     Yes, sir.

Q.     And did that student give you any names of other students to talk to?

A.     Yes, sir.

Q.     What name, if any, do you remember?

A.     [J.O.].

The State asked Officer Cuellar what he did after the student directed him to J.O.  Officer Cuellar explained that he immediately pulled J.O. out of class to speak with her.  Then the State asked:

Q.     So why is this something that you need to speak to her about right away?  Why not just wait till the end of the day?

A.     It was a very serious issue and we wanted to make sure that she was safe and she was okay.

And later in Officer Cuellar's testimony, the State asked:

Q.     About two weeks after this day, October 2nd 2019, do you remember if you spoke again with [J.O.]?

A.     I did.

Q.     And do you remember who was present this time?

A.     It was myself, [J.O.], the assistant principal and the previous student.

Glenn did not object to the testimony but moved for a mistrial at the next break.  He argued that Officer Cuellar's testimony about immediately contacting J.O. created an unfair sense of urgency.  And he claimed Officer Cuellar's

testimony that the student who first disclosed concerns to him was present at the later meeting on October 15 would ultimately lead the jury to conclude that O.G. was that student. He explained that the jury would later hear from J.O. that O.G. persuaded her to disclose because he, too, experienced abuse. According to Glenn, this would suggest that he also abused O.G.

The court ruled that Officer Cuellar's testimony about contacting J.O. did not create "incurable prejudice that will prevent this jury from having a fair trial." Still, it offered to issue a curative instruction. Glenn declined. The court denied the motion for a mistrial.

Still, the trial court wanted to address Glenn's concern that the jury could ultimately link O.G.'s abuse to Glenn. As a result, Glenn moved to exclude any testimony that O.G. urged J.O. to disclose because he was also a victim of sexual abuse. The State argued it should still be allowed to elicit the testimony and suggested that any potential prejudice could be removed by asking J.O., " 'During this conversation with [O.G.], did he tell you about having been sexually abused sometime in his past when he was younger.' " Glenn maintained his original position but agreed, "That's better." The court agreed that the question as phrased would "break the potential link the jury might draw between [O.G.] and Mr. Glenn."

The jury convicted Glenn on one count of sexual misconduct with a minor in the second degree. Glenn appeals.

6

ANALYSIS

Confrontation Clause

Glenn claims for the first time on appeal that Officer Cuellar's "improper testimony violated Mr. Glenn's state and federal constitutional right to confront adverse witnesses." The State asserts that Glenn failed to preserve this claim of error. We agree with the State.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to confront and cross-examine witnesses. Crawford v. Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); State v. Burns, 193 Wn.2d 190, 207, 438 P.3d 1183 (2019). The confrontation clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior chance to cross-examine the witness. Crawford, 541 U.S. at 59.

But a defendant's failure to assert the right to confrontation at trial operates as a waiver. Burns, 193 Wn.2d at 210-11. And the waiver is not subject to a manifest constitutional error analysis under RAP 2.5(a)(3). Id. This furthers the interests of judicial efficiency and clarity and provides a basis for appellate courts to review a trial judge's decision. Id. at 211.

Before trial, the State argued that "there has to be some sort of, however sanitized, reference to the fact that . . . [O.G.] had made an allegation of sexual misconduct against . . . Glenn." According to the State, the evidence was

7

necessary to show "how these charges came about in the first place." In response, Glenn argued:

> So, Your Honor, I understand where the State is coming from about wanting to explain that [J.O.] and [O.G.] were friends, that [J.O.] and [O.G.] had conversations about this. But then to insert the extraneous fact that it was all based on [O.G.] alleging sexual misconduct against Mr. Glenn, when Mr. Glenn is not going to have an opportunity to defend himself against that allegation, to leave it to the jury to say, "Why isn't [O.G.] here?"
>
> . . . .
>
> So to leave hanging, this unexplained allegation of sexual misconduct against Mr. Glenn, is extremely unfair. We're not going to hear any testimony about what that is, the investigation that was done into it and have [O.G.] tell the jury himself, to introduce forensic evidence that we found to be exculpatory in this matter, to explain the absence of text messages, to just leave it hanging that there was this unsolved allegation of sexual misconduct out there that [Glenn] can't defend himself against is highly prejudicial.

Ultimately, the State suggested Officer Cuellar could testify that " '[a]nother student expressed concerns about Mr. Glenn and encouraged me to reach out to her.' " The court then asked Glenn's attorney, "[D]o you want to weigh in on that." The attorney responded, "I think that's as sanitized as it can be, Your Honor."

At trial, the State asked Officer Cuellar whether a student "disclosed that they had some concerns about" Glenn and whether that student pointed him to other students that he "should talk to . . . about additional or different incidents." Glenn objected to neither question.

Glenn's agreement to the State's proffered question and his failure to object to the testimony at trial as a violation of his confrontation rights deprived the trial court of the opportunity to assess the admissibility of the testimony and

prevent or cure the alleged error at trial. As a result, Glenn waived his right to challenge Officer Cuellar's testimony under the confrontation clause on appeal.

Motion for Mistrial

Glenn argues that the trial court erred when it denied his motion for a mistrial. We disagree.

We review a trial court's denial of a motion for mistrial for abuse of discretion. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. State v. Barry, 184 Wn. App. 790, 797, 339 P.3d 200 (2014). We will reverse the trial court only if there is a substantial likelihood that the trial irregularity prompting the motion affected the jury's verdict. State v. Rodriguez, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002). Generally, violating a ruling in limine amounts to a serious trial irregularity. State v. Thompson, 90 Wn. App. 41, 46, 950 P.2d 977 (1998).

A trial court has broad discretion to rule on irregularities during trial because it is in the best position to determine whether the irregularity caused prejudice. State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015); State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. State v. Babcock, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008). We consider three factors to determine whether an irregularity warrants a new trial: (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other properly admitted evidence, and

(3) whether an instruction could cure the irregularity. State v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011).

Before trial, the court ruled in limine that the State could not offer evidence of O.G.'s allegations against Glenn. Still, the court conferred with the parties and all agreed that Officer Cuellar could testify that " '[a]nother student expressed concerns about Mr. Glenn and encouraged [him] to reach out to [J.O.].' "

At trial, Officer Cuellar explained how he first approached J.O.:

Q.      Okay. Near in the beginning of that school year, in October of 2019, do you recall talking to a student who came to you and disclosed that they had some concerns about the school nurse named Mark Glenn?
A.      Yes, sir.
. . . .
        [PROSECUTOR]: Do you remember the demeanor of this student when you were talking to them about this disclosure?
A.      They seemed a little embarrassed.
Q.      Okay. Was the student — was this a serious conversation? Was there a concern from the student?
A.      It was a very serious conversation; there was concern.

He then described immediately pulling J.O. out of class to speak with her. The prosecutor asked Officer Cuellar why he needed to talk to J.O. right away. He explained, "It was a very serious issue and we wanted to make sure that she was safe and she was okay." Later, the State asked:

Q.      About two weeks after this day, October 2nd 2019, do you remember if you spoke again with [J.O.]?
A.      I did.
Q.      And do you remember who was present this time?
A.      It was myself, [J.O.], the assistant principal and the previous student.

Glenn argues the testimony about Officer Cuellar having a serious conversation with a student and then immediately approaching J.O. amounts to a

serious irregularity because "the prosecutor departed substantially from the agreed line of questioning," and it created the impression that Glenn's conduct was "so serious that the investigating officer became immediately concerned for [J.O.'s] health and safety." But the court did not rule in limine that Officer Cuellar could not testify about why he immediately contacted J.O. And Glenn fails to show how he was prejudiced by testimony that a school resource officer took allegations of misconduct by an employee toward a student seriously. Even so, a curative instruction could have alleviated any prejudice caused by the testimony. The court offered such an instruction but Glenn declined.

Glenn also contends Officer Cuellar's testimony that the student who first disclosed concerns about Glenn also accompanied J.O. to the principal's office when she revealed the sexual assault warranted a mistrial. But the court cured any potential prejudice that could flow from that testimony by limiting O.G.'s disclosure to " 'having been sexually abused sometime in his past when he was younger.' " This distanced O.G.'s abuse from J.O.'s allegations and sufficiently avoided the connection between O.G. and Glenn. The court did not abuse its discretion by denying Glenn's motion for a mistrial.

Ineffective Assistance of Counsel

Glenn argues he received ineffective assistance of counsel because his attorney did not also move for a mistrial based on the prosecutor's question suggesting that there were "additional or different incidents" of sexual abuse by Glenn. We disagree.

We review ineffective assistance of counsel claims de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To succeed on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and prejudice. Strickland, 466 U.S. at 687.

Representation is deficient when it falls below an objective standard of reasonableness. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when there is a reasonable probability that but for counsel's error, the result of the trial would have been different. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

Glenn argues the prosecutor's question "revealed the fact of a second accuser," and his attorney's failure to include the inappropriate question as grounds for mistrial "understated the prejudicial effect of the improper testimony." According to Glenn, the argument would have compelled the court to grant his motion for a mistrial.

12

Citing State v. Escalona, 49 Wn. App. 251, 742 P.2d 190 (1987), Glenn argues the prosecutor's question was inadmissible ER 404(b) evidence because it "told the jury that, in addition to the alleged victim whose testimony they would soon hear, Mr. Glenn had also victimized another student." In Escalona, the State charged the defendant with second degree assault for threatening the victim with a knife. Id. at 252. At trial, the victim testified that Escalona " 'already has a record and had stabbed someone.' " Id. at 253. We held this testimony was inappropriate propensity evidence because a jury could conclude that Escalona "acted on this occasion in conformity with the assaultive character he demonstrated in the past." Id. at 255-56.

Unlike Escalona, no witness here testified that Glenn sexually assaulted other students. And as much as the prosecutor's question suggested that there may have been other "incidents" with Glenn, this was not new information for the jury. Consistent with the order in limine, the prosecutor's previous question was whether a student "had some concerns" about Glenn. Even so, an instruction to the jury could have cured any prejudice from the question. Glenn fails to show a reasonable probability that "[h]ad defense counsel explained [how the prosecutor's question prejudiced him], the court would likely have granted the motion for a mistrial."

Because Glenn waived his challenge under the confrontation clause, the trial court did not abuse its discretion by denying his motion for a mistrial, and he fails to show ineffective assistance of counsel, we affirm.

Brennan, J

WE CONCUR:

Chung, J.　　　　　Coburn, J.