JOHNSON, J.
*193 ¶1 This case involves, first, whether Michael Burns was improperly denied his right to waive counsel and represent himself at trial and, second, whether he may assert a violation of the confrontation clause for the first time on appeal. The trial court judge denied Burns's request to proceed pro se based on a lack of understanding of the nature of the charges against him where he indicated that the criminal charges did not pertain to him and that he had not entered into a contract such that the State could bring charges against him. Burns claimed on appeal that his right to confrontation was violated when statements of his victim came in as evidence through testimony of her neighbor and the responding police officer, although she *194 herself did not testify. Burns did not object to the testimony on confrontation grounds at trial. The Court of Appeals held that the trial court judge did not abuse her discretion in denying Burns's request to proceed pro se and that Burns waived his right to assert a confrontation violation when he did not object at trial. We affirm the Court of Appeals.
FACTS AND PROCEDURAL HISTORY
¶2 The State charged Michael Burns with assault in the second degree-domestic violence, and felony violation of a no contact order-domestic violence, for strangling Christina Jackson while a no contact order was in effect.[1] Clerk's Papers (CP) at 25-27.
¶3 At one of his first court appearances, Burns said, "I just want to request new legal representation" because "I haven't been represented the way I see fit." Verbatim Report of Proceedings (VRP) (Dec. 10, 2015) at 17. The trial court informed Burns that he was *1185 not entitled to a public defender of his choosing.
¶4 After numerous requests to proceed pro se, the court held a hearing on January 13, 2016 regarding Burns's request to represent himself. At the hearing Burns stated,
I would like to go pro se for reasons other than just becoming aware of certain things. And furthermore, I just, you know, I'd rather handle my own business considering certain matters especially when I've gotten lied to, threatened, and coerced into certain things that I wasn't aware of at the time but I am aware of now. So I would like to go pro se because of those certain aspects of things so.
VRP (Jan. 13, 2016) at 2-3. The court then began to explain the nature of the charges in all three of Burns's pending cases. Interrupting this explanation, Burns stated, "These matters being spoken of do not pertain to me, okay?" and the following exchange occurred:
*195 THE COURT: You say these charges don't pertain to you. It looks to me like they do. You've been charged and we're here in court, why don't they pertain to you in your view?
MR. BURNS: Because they don't. I'm not a corporate entity, I'm a human being, and I'm not contracted into your place of business. Furthermore, I will not be contracted in your place of business, okay.
THE COURT: Well, the law doesn't require any contract if a person is accused of a crime, the person is tried in a court whether they agree to that or not. And so you've been charged with some serious crimes and if there is a trial and you're convicted of those crimes you'll be serving sentences for those crimes. It's my job to make sure that you understand exactly how serious those sentences could be and that's why I'm going through all of the crimes and all of the potential sentences.
MR. BURNS: Ma'am, I understand completely what you're talking about. I understand that there is some, I, you know, somebody could be charged and sentenced to a serious amount of time for those matters, but like I said, they do not pertain to me and I'm not going to allow this. I would like to relieve counsel of their duties so I can become pro se.
VRP (Jan. 13, 2016) at 6-7.
¶5 The court continued explaining the pending charges against Burns and the potential sentences and fines associated with all three cases. When asked about his education, Burns stated, "I don't think that really matters." VRP (Jan. 13, 2016) at 11. When the court inquired further, Burns said, "I think I'm highly educated enough to represent myself because other than maybe a little looking into a few things about the law I think I can handle it because it's mostly just keeping your composure and acting." VRP (Jan. 13, 2016) at 11. The court explained that Burns would be held to the same standards as the prosecution and would have to abide by the rules of procedure and evidence. Burns replied,
I completely understand everything that I'm up against, okay, Your Honor? I completely understand what is up, what sentencing *196 may occur, all of that stuff. I completely understand all of that and it doesn't phase [sic] me a bit. And, you know, I just, I made a mistake on asking for a public defender because I, I have a right to be represented as I see fit and the only person that's going to represent me as I see fit is me so that's why I'm here today, Your Honor.
VRP (Jan. 13, 2016) at 13.
¶6 The court then inquired into the alleged threats and coercion that Burns referred to at the beginning of the hearing, and the following exchange occurred:
MR. BURNS: My lawyer .... [S]he has tried to get me to sign this contract that I'm not going to, I'm not going to sign. I'm not going to -- and furthermore, her and [the prosecutor] have coerced me into opening a contract without my knowledge or consent and I shot that down.
THE COURT: I don't know what you are referring to as a contract.
MR. BURNS: Well, it is a contract.
THE COURT: Well, what is it? What are you talking about?
MR. BURNS: It's a contracts [sic] in the corporation and I'm not buying.
*1186 THE COURT: What's the corporation that you're referring to?
MR. BURNS: It's, the corporation is the United States, Your Honor, and I am not a citizen of that corporation. So I am not, I'm here to stand here today and tell you that I want to represent myself as pro se and I'm not buying into the company, okay? And I demand -
THE COURT: Mr. Burns, do you believe there's a corporation involved in the prosecution of these charges?
MR. BURNS: Yes, there always is.
VRP (Jan. 13, 2016) at 14-15.
¶7 At this point, the court and the attorneys had a discussion regarding Burns's competency to stand trial. Burns's attorney indicated she did not see a reason to get a competency evaluation. The prosecutor described Burns's *197 past requests to proceed pro se and indicated, while he was not asking for a competency evaluation, he was concerned as to whether Burns could make a knowing, voluntary, and intelligent waiver of counsel based on Burns's representations to the court.
¶8 Burns again indicated, "I would love to waive counsel period." VRP (Jan. 13, 2016) at 19. Then the following exchange occurred:
THE COURT: I understand that. The question for me, as [the prosecutor] pointed out, is whether you're able to do that with full understanding of the situation that you're in. And, frankly, I am concerned that you don't seem to have a full understanding of the situation you're in because just observing you you've not, you've been very impatient for me to finish describing the charges and potential penalty to you, you've indicated that doesn't matter to you.
MR. BURNS: Oh, it matters.
THE COURT: You also indicated a belief that there is a corporation involved here that you were required to be involved with and that your not being involved with the corporation has something to do with your, with the fact that you're going to have to go to trial. And you've said that you don't believe the charges against you apply to you. I've tried to explain that they very much apply to you.
MR. BURNS: It's not a case, Your Honor.
THE COURT: You have trial in those cases because you've been charged with these crimes. So all in all I'm concerned about whether you understand how the criminal system works and what the consequences of criminal charges can be. And if you don't understand how that legal system works and what the results of being charged with a crime can be, you're going to need legal help.
MR. BURNS: Your Honor, from what I just said I, my understanding is that Mr. Burns is contracted into two cases that have been globalized into one matter, okay. There is a matter at your fingertips that is not a case yet, I have rejected the contract for it to become a case and --
VRP (Jan. 13, 2016) at 19-21.
*198 ¶9 At this point, the court cut Burns off and again attempted to explain the three separate cases against Burns. The judge then denied Burns's motion to proceed pro se explaining, "I don't think that Mr. Burns understands the nature of the charges and the seriousness of the situation" and "Mr. Burns, is not in my view competent to represent himself." VRP (Jan. 13, 2016) at 22. The judge further indicated she would leave any competency concerns to counsel.
¶10 After a brief recess off the record, Burns was removed from the courtroom because of his disruptive behavior in reaction to the denial of the motion. The parties then discussed a written order, and the judge indicated she could not find that Burns knew enough about the charges against him to make a knowing waiver of his right to counsel. The court then filed a written order, which stated that the court was concerned Burns did not appreciate the nature of the charges against him and that the court was unable to find he could knowingly and voluntarily waive his right to counsel.
¶11 The trial court held another motion hearing on the issue of representation on May 3, 2016. The court again denied the motion, again based on Burns not knowingly and intelligently waiving his right to counsel as he did not understand the nature of the charges against him.
*1187 ¶12 With counsel, Burns proceeded to trial on June 13, 2016. At trial, the State called two witnesses who repeated out-of-court statements Jackson (the victim) had made the night of the assault: Jackson's neighbor Carol Donovan and Bellingham Police Officer Kent Poortinga.
¶13 During direct examination, Donovan testified that on November 14, 2015, she was at home about to eat dinner when she heard "yelling and crashing around downstairs." VRP (June 14, 2016) at 253. She then heard yelling outside and people coming up the stairs, so she opened her door and saw Jackson running away from Burns, who was reaching out and trying to grab her. Over defense's hearsay objection, *199 the court allowed Donovan to testify that Jackson said, " '[H]e's trying to kill me,' " admitting the statement as an excited utterance and present sense impression. VRP (June 14, 2016) at 254. Donovan then testified she grabbed Jackson by the arm and pulled her into the condominium, closed and locked the door, and called the police. Jackson was "extremely upset," looked like she had been crying, and was having trouble breathing. VRP (June 14, 2016) at 254. Jackson told Donovan, " '[H]e choked me,' " and Donovan observed red marks on Jackson's neck. VRP (June 14, 2016) at 254-55. Donovan inquired if Jackson was okay, and she said she was calming down and felt safe there.
¶14 Over another hearsay objection, the court allowed limited testimony as to what Jackson told Donovan had happened with Burns. Donovan testified they had had a fight and Burns "choked her, she blacked out, she came to, she kicked him and she ran out of there and that's when I saw her on the stairway." VRP (June 14, 2016) at 260.
¶15 The State next called Officer Poortinga, who was a responding officer the night of the incident. He testified that when he made contact with Jackson at Donovan's condominium, Jackson was "obviously distraught, ... crying and very disturbed." VRP (June 14, 2016) at 280. Jackson told Officer Poortinga that her "head, neck and chest were very sore." VRP (June 14, 2016) at 281. During direct examination, the prosecutor elicited minimal other testimony regarding Jackson's statements to police. Defense made no objections to the State eliciting Jackson's statements to Officer Poortinga.
¶16 On cross-examination, defense counsel asked, "[D]id Ms. Jackson tell you that she had been choked to unconsciousness three separate times that night?" VRP (June 14, 2016) at 296. Officer Poortinga responded, "I believe so." VRP (June 14, 2016) at 296. On redirect, the State's first question was "Counsel asked about the statement that Ms. Jackson made. Let's give the jury a full understanding of those statements. What did she tell you what [sic] happened?"
*200 VRP (June 14, 2016) at 298. Officer Poortinga testified Jackson told him that she and Burns had dated and lived together and that he had been staying with her for the last two weeks. Jackson told the officer she was trying to get Burns to leave and he refused, and then Burns got "agitated" and " 'snapped.' " VRP (June 14, 2016) at 299, 300. Officer Poortinga testified she told him,
He then got on top of her and with one knee on her chest began to cover her nose with one hand gripping her neck with the other hand.
Then [Ms. Jackson] said that she couldn't breath[e] and she said "at all" as it felt like he was, again quoting, "pushing with all his body weight on her neck". She said that she tried to squeak out and plead with him.
VRP (June 14, 2016) at 300. "She was pleading with Michael before she again quote 'blacked out'." VRP (June 14, 2016) at 300. The officer then testified that Jackson told him that when she regained consciousness, Burns attacked her again, and she blacked out again; this also happened a third time. She told the officer, "Michael had said he was already going to prison so he was going to make it quote 'worth it and kill [me].' " VRP (June 14, 2016) at 301. She then kicked Burns off and ran away, and she went into Donovan's condominium. Defense counsel did not object to any of this testimony.
¶17 Toward the close of the first day of trial, the prosecutor indicated that he was not sure Jackson was going to respond to her subpoena and testify at the trial the following day. The next morning, the parties discussed Jackson's absence from the trial. The prosecutor *1188 expressed the State's efforts to communicate with Jackson and sought to put on witnesses to explain the absence to the jury. Defense counsel indicated she objected only to any speculation as to Jackson's reasons for not testifying. Defense counsel also sought to impeach Jackson as a hearsay witness through her alleged prior inconsistent statements made at the defense investigation interview. The court allowed the impeachment *201 after an offer of proof. Defense counsel did not object on confrontation clause grounds to Jackson's previous statements that had come in through Donovan and Officer Poortinga, even after learning she would not testify. The jury convicted Burns as charged.
¶18 Burns appealed his conviction, arguing that the trial court abused its discretion when it denied him his right to represent himself at trial and asserting, for the first time on appeal, that the admission of Jackson's statements at trial violated his constitutional right to confrontation. The Court of Appeals affirmed the conviction, holding that the trial court did not abuse its discretion in denying Burns's request to proceed pro se and holding that Burns waived his confrontation clause claim when he did not assert it at trial. State v. Burns, No. 75537-4-1, slip op. at 12-13, 2018 WL 418759 (Wash. Ct. App. Jan. 16, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/755374.pdf. Burns petitioned this court for review, which we granted as to the issues of self-representation and the confrontation clause.[2] State v. Burns, 191 Wash.2d 1004, 428 P.3d 123 (2018).
ISSUES
1. Whether the trial court abused its discretion in denying Burns's requests to proceed pro se.
2. Whether a party who did not object at trial may raise an alleged violation of the confrontation clause for the first time on appeal.
ANALYSIS
1. Self-representation
¶19 "Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United *202 States Constitution." State v. Madsen, 168 Wash.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22 ("the accused shall have the right to appear and defend in person"); Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ). "The unjustified denial of this [fundamental] right requires reversal." State v. Stenson, 132 Wash.2d 668, 737, 940 P.2d 1239 (1997).
¶20 We review the denial of a defendant's request to proceed pro se for abuse of discretion. A trial court abuses its discretion if the decision is manifestly unreasonable such that no reasonable mind could come to that decision, if the decision is not supported by the facts, or if the judge applied an incorrect legal standard. Madsen, 168 Wash.2d at 504, 229 P.3d 714. Absent an abuse of discretion, we will not reverse a trial court's decision, "even if we may have reached a different conclusion on de novo review." State v. Curry, 191 Wash.2d 475, 486, 423 P.3d 179 (2018).
¶21 We give great deference to the trial court's discretion because the trial court is in a favorable position to the appellate courts in evaluating a request to proceed pro se. Trial judges have more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during a request. Curry, 191 Wash.2d at 485, 423 P.3d 179.
¶22 A tension exists between the constitutional right to self-representation and the constitutional right to proceed with adequate counsel. State v. DeWeese, 117 Wash.2d 369, 376, 816 P.2d 1 (1991). Both the United States Supreme Court and this court have directed courts to indulge in " 'every reasonable presumption ' against a defendant's waiver of his or her right to counsel."
*1189 In re Det. of Turay, 139 Wash.2d 379, 396, 986 P.2d 790 (1999) (emphasis added) (quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) ). Therefore, in reviewing the denial of a defendant's request to proceed pro se, the presumption is against the waiver of counsel. However, even with this presumption, a trial court may deny a *203 request to proceed pro se only if the request is "equivocal, untimely, involuntary, or made without a general understanding of the consequences. " Madsen, 168 Wash.2d at 505, 229 P.3d 714 (emphasis added).
¶23 In evaluating a defendant's request to go pro se, the trial court is faced with a multistep process. The first step is a combined determination of whether the request is unequivocal and timely. The parties in this case do not dispute that Burns made multiple unequivocal and timely requests to proceed pro se. Burns made several requests, and the trial court held two separate hearings on whether to allow Burns to waive his right to counsel.
¶24 Where a request is unequivocal and timely, a trial court must then determine if the request is knowing, voluntary, and intelligent. Madsen, 168 Wash.2d at 504, 229 P.3d 714 (citing Faretta, 422 U.S. at 835, 95 S.Ct. 2525 ). The method for determining whether a defendant understands the risks of self-representation is a colloquy on the record. The colloquy should generally include a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case. City of Bellevue v. Acrey, 103 Wash.2d 203, 211, 691 P.2d 957 (1984). In order to give direction to trial courts and create an adequate record for an appeal, our cases have suggested several additional, nonexhaustive factors to consider in the colloquy including education, experience with the justice system, mental health, and competency. See Madsen, 168 Wash.2d at 505, 229 P.3d 714 ; Acrey, 103 Wash.2d at 211-12, 691 P.2d 957. The trial court may also look to the defendant's behavior, intonation, and willingness to cooperate with the court. See Curry, 191 Wash.2d at 484-85, 423 P.3d 179. While the suggested factors are not exhaustive or sufficient individually, the trial court must evaluate all of the information in front of it and use its discretion to determine whether the waiver is knowing, voluntary, and intelligent, and to ensure a waiver is made with an understanding of the consequences and the seriousness *204 of the charges, keeping in mind the presumption against the waiver of the right to counsel. So long as a trial court conducted an adequate inquiry into a defendant's request and there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary, the trial court's discretionary decision will not be disturbed on appeal.
¶25 Where no colloquy occurs, we have found the record insufficient to review the basis for the trial court's ruling. For example, in Madsen, we reversed the trial court's denial of the defendant's multiple requests to proceed pro se. 168 Wash.2d at 510, 229 P.3d 714. As to one request, we reasoned because the court did not engage in a full colloquy and "there is no evidence to the contrary, the only permissible conclusion is that Madsen's request was voluntary, knowing, and intelligent." Madsen, 168 Wash.2d at 506, 229 P.3d 714. Then Justice Fairhurst reiterated the reasoning in DeWeese, that for a waiver to be knowing, intelligent, and voluntary, a defendant must be aware of and understand the nature of the charges against him, which the record did not reflect. Madsen, 168 Wash.2d at 511-12, 229 P.3d 714 (Fairhurst, J., concurring).
¶26 The present case presents the converse of Madsen because the trial court engaged in a comprehensive colloquy, inquiring into the factors our cases have established. While it may be true that Burns indicated, "I understand completely what you're talking about" and "I completely understand everything that I'm up against," his other remarks indicate the exact opposite. VRP (Jan. 13, 2016) at 7, 13. At the hearing, Burns indicated the criminal charges did not pertain to him, he did not enter into a contract with the State, the multiple felonies he faced did not faze him, conducting a trial is just about acting, the United States is a corporation of which he is not a citizen, he had only two cases that had been "globalized into one matter," and he rejected any contract that created the case against him. The record establishes that the trial court judge *1190 expressed concerns about whether Burns could knowingly and intelligently *205 waive his right to counsel based on Burns's statements and behavior at the hearing. The colloquy in this case was extensive and comprehensive and supports the conclusion that Burns did not understand the nature or seriousness of the charges against him.
¶27 In concluding that Burns was not denied his constitutional right to represent himself, the Court of Appeals analyzed the "extensive colloquy" between Burns and the trial court. Burns, slip op. at 9. The Court of Appeals noted that the record showed that Burns did not understand the charges against him and that he was facing significant prison time; he also did not understand the importance of courtroom procedure and the "technicalities" of self-representation. Burns, slip op. at 10. Further, "Burns's interactions with the trial court revealed a lack of understanding of the gravity of his situation." Burns, slip op. at 10.
¶28 Burns argues that "the court denied [his] request to represent himself based solely upon his competency." Suppl. Br. of Pet'r at 17. While the trial court judge did once say she did not find Burns "competent" to represent himself, this is somewhat a mischaracterization of the record and disregards the entirety of the record, the judge's formal oral ruling, the discussion of the proposed order, the text of the proposed order, and the ruling in the subsequent motion hearing. All of this supports the trial court's ruling that the request was denied because Burns did hot understand the nature of the charges against him and, thus, could not knowingly, intelligently, and voluntarily waive his right to counsel.
¶29 Relying on In re Personal Restraint of Rhome, 172 Wash.2d 654, 260 P.3d 874 (2011), and Madsen , Burns further argues that a trial court's concern over a defendant's competency to stand trial is only one factor in considering whether a waiver is knowing, voluntary, and intelligent. Suppl. Br. of Pet'r at 17. While this may be true, Burns appears to conflate a question of competency with an outright denial of his request because of competency.
*206 ¶30 In Godinez v. Moran , the United States Supreme Court held that competency to stand trial is not all that is necessary to be able to waive the right to counsel; "a trial court must [also] satisfy itself that the waiver of his constitutional rights is knowing and voluntary ." 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (emphasis added) (citing Faretta, 422 U.S. at 835, 95 S.Ct. 2525 ). "In this sense there is a 'heightened' standard ... for waiving the right to counsel, but it is not a heightened standard of competence. " Godinez , 509 U.S. at 400-01, 113 S.Ct. 2680. That same reasoning applies here.
¶31 Even without the benefit of seeing Burns's demeanor and hearing his intonation as the judge did, we agree his statements are not consistent with a defendant who understands the nature and seriousness of the charges against him.
¶32 We hold that the trial court did not abuse its discretion when it denied Burns's request to represent himself because the trial court record is sufficient to support the conclusion that Burns did not understand the nature and seriousness of the charges against him and could not knowingly, voluntarily, and intelligently waive his right to counsel. We affirm the Court of Appeals on this issue.
2. Confrontation Clause
¶33 Raised for the first time on appeal, Burns argues that the admission of Jackson's out-of-court statements to the neighbor and the officer violated his right to confrontation as she herself did not testify at trial. The Court of Appeals held that because no objection was made at trial, the issue was waived. Burns argues that we should apply RAP 2.5(a)(3) and find violation of the confrontation clause is a "manifest error affecting a constitutional right" such that he can raise this claim for the first time on appeal. Suppl. Br. of Pet'r at 7. We reject this argument, agree with *207 the Court of Appeals, and hold that Burns waived any challenge to the testimony by not objecting at trial.[3]
¶34 The Sixth Amendment affords the accused the right "to be confronted with the *1191 witnesses against him." U.S. CONST. amend. VI. This right is also established by article I, section 22 of the Washington State Constitution.
¶35 Under RAP 2.5(a)(3), a defendant may raise for the first time on appeal a "manifest error affecting a constitutional right." In State v. Kronich, 160 Wash.2d 893, 161 P.3d 982 (2007), we reviewed an alleged confrontation clause violation, applying RAP 2.5(a)(3) where no objection was made at trial. In Kronich, the defendant alleged, for the first time on appeal, that the admission of his certified statement of his driving record violated his right to confrontation. We held that a violation of the confrontation clause could be raised for the first time on appeal subject to a RAP 2.5(a)(3) manifest constitutional error analysis. Given that the alleged error was a violation of the confrontation clause and the State's case was "fatally undermined" without the driving record, we held this was a manifest constitutional error and reached the merits of the confrontation clause violation, although we ultimately found no violation and affirmed the conviction. Kronich, 160 Wn.2d at 900, 161 P.3d 982.
¶36 In light of the United States Supreme Court cases of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), among others, we have reevaluated our cases to align with the minimum requirements of the Sixth Amendment established by the Supreme Court. In Melendez-Diaz, the United States Supreme Court examined the confrontation clause in conjunction with notice-and-demand statutes and state laboratory analyst affidavits, holding the admission of the *208 affidavits violated the confrontation clause. In that opinion, the Supreme Court also held that "[t]he defendant always has the burden of raising his Confrontation Clause objection." Melendez-Diaz , 557 U.S. at 327, 129 S.Ct. 2527. The Supreme Court further emphasized, "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence ." Melendez-Diaz, 557 U.S. at 314 n.3, 129 S.Ct. 2527 (emphasis added).
¶37 In Jasper, we overruled Kronich in light of the United States Supreme Court holding in Melendez-Diaz. See State v. Jasper, 174 Wash.2d 96, 100, 271 P.3d 876 (2012) ("[W]e now overrule [ Kronich ] to the extent [it is] contrary to United States Supreme Court precedent."). The State here argues that Melendez-Diaz and Jasper have undermined the approach taken in Kronich and where a defendant does not object to testimony at trial on confrontation grounds, he or she waives his or her right to confrontation. Aligning our analysis in this context with that employed by the United States Supreme Court furthers consistency between cases. Therefore, we abrogate Kronich to the extent its analysis is inconsistent with the waiver approach set forth in this opinion.
¶38 In our Courts of Appeals, the divisions have employed two different approaches in reviewing unpreserved confrontation clause claimed errors: waiver by failure to object and manifest constitutional error under RAP 2.5(a)(3) analysis.
¶39 Division One in this case, relying on its analysis and reasoning from State v. O'Cain, 169 Wash. App. 228, 279 P.3d 926 (2012), concluded that where the defendant does not object on confrontation grounds, any claimed error is waived. In O'Cain, the Court of Appeals engaged in a comprehensive analysis of when a confrontation clause claim can be reviewed on appeal in light of Melendez-Diaz, referring to the many instances in which the United States Supreme Court in that case emphasized the burden of the defense to object to evidence in violation of the confrontation clause. The O'Cain opinion highlighted two principles that are *209 recognized and significant in Melendez-Diaz : (1) a defendant loses the right to confrontation if he or she does not object at trial and (2) states have the power to create their own rules that govern how a defendant may assert a confrontation clause violation.[4] See *1192 O'Cain, 169 Wash. App. at 236-40, 279 P.3d 926.
¶40 In O'Cain, the court identified the applicable procedural rule in Washington to be ER 103. Under ER 103(a)(1), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike is made, stating the specific ground of objection." Applying ER 103 and requiring a defendant to object at trial "protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal." O'Cain, 169 Wash. App. at 243, 279 P.3d 926. Requiring an objection under ER 103 is also consistent with the discovery and disclosure process of criminal procedure.
¶41 The O'Cain court further reasoned that allowing a defendant to assert a confrontation claim for the first time on appeal is problematic because it would place the trial judge in a compromising position. The judge would be faced with the decision to sua sponte identify and rule on a confrontation clause violation, which may disrupt trial or defense tactics, or risk presiding over a trial that could be reversed on appeal. Whether defense counsel will object on confrontation grounds can unquestionably be a trial tactic. When the defense has the choice to object or not, where no objection or motion to strike is made, appellate courts are left speculating as to whether it was a trial tactic or an error *210 by the defense. Requiring an objection also has a practicable aspect: the trial court judge will rule on the objection, giving the appellate courts an actual trial court decision to review. See O'Cain, 169 Wash. App. at 243-44, 279 P.3d 926.
¶42 Divisions Two and Three[5] seem to apply RAP 2.5(a)(3), analyzing whether the alleged error amounts to a manifest error affecting a constitutional right. See, e.g., State v. Hart, 195 Wash. App. 449, 458 n.3, 381 P.3d 142 (2016) (acknowledging that although the O'Cain analysis of Melendez-Diaz and Bullcoming[6] requiring a defendant to assert the right at trial is "sound," it will follow the RAP 2.5(a)(3) analysis from Hieb[7] until and unless this court overrules it). Under this analysis, we first determine if an alleged error is constitutional in nature and, then, whether the alleged error had " 'practical and identifiable consequences in the trial.' " Kronich, 160 Wash.2d at 899, 161 P.3d 982 (quoting State v. Kirkpatrick, 160 Wash.2d 873, 880, 161 P.3d 990 (2007), overruled in part by Jasper, 174 Wash.2d 96, 271 P.3d 876, (quoting State v. Stein, 144 Wash.2d 236, 240, 27 P.3d 184 (2001) ) ).
¶43 In the present case, the Court of Appeals followed the O'Cain analysis and held that a defendant must assert his right to confrontation at trial or the right is waived. We agree with the O'Cain analysis of Melendez-Diaz. Thus, we affirm the Court of Appeals and explicitly adopt a requirement that a defendant raise an objection at trial or waive *211 the right of confrontation. Requiring an objection brings this claim to align with what we employ in other cases where we have held that some constitutional rights may be waived by a failure to object.[8] See, e.g., *1193 State v. Slert, 186 Wash.2d 869, 383 P.3d 466 (2016) (Sixth Amendment right to be present during in chambers discussion of potential jury bias waived when defendant did not object at trial); In re Adoption of M.S.M.-P., 184 Wash.2d 496, 358 P.3d 1163 (2015) (counsel's affirmative consent to closure of proceedings waived parent's right to open proceedings); see also State v. Sublett, 176 Wash.2d 58, 124-25, 292 P.3d 715 (2012) (Madsen, C.J., concurring) (discussing constitutional rights the United States Supreme Court has listed can be waived by failure to object, including the right to be present, Fourth Amendment right against unlawful search and seizure, unlawful postarrest delay, double jeopardy defense, Fifth Amendment claims, and the right of confrontation ). Further, requiring an objection is in the interests of judicial efficiency and clarity, and provides a basis for appellate courts to review a trial judge's decision. Where a defendant does not object at trial, "nothing the trial court does or fails to do is a denial of the right, and if there is no denial of a right, there is no error by the trial court, manifest or otherwise, that an appellate court can review." State v. Fraser , 170 Wash. App. 13, 25-26, 282 P.3d 152 (2012).
CONCLUSION
¶44 We affirm the Court of Appeals. The trial court did not abuse its discretion in denying Burns's request to proceed pro se. Further, Burns waived his right to raise a *212 confrontation clause violation on appeal when he did not object on that ground at trial.
WE CONCUR:
Fairhurst, C.J.
Owens, J.
González, J.
Yu, J.

Burns also had two other felony cases with multiple charges pending against him that the court referenced at his hearing on self-representation.

Burns also argued on appeal that the convictions were the same criminal conduct, but we denied review of that issue.

Puzzlingly, the concurrence comes to this same conclusion under a convoluted test that conflates ineffective assistance of counsel and RAP 2.5(a)(3) : because counsel did not object at trial and there was a plausible tactical reason to not object, Burns is not entitled to relief.

The concurrence disputes this reading of Melendez-Diaz and asserts that the only proposition is that states may create their own procedural rules that govern confrontation clause claims. Concurrence at 1194. Even if this were a correct reading of Melendez-Diaz, that would mean that we are free to interpret our rules to require a defendant to object on confrontation clause grounds at trial or waive that right on appeal, as we do in this opinion.

While recent cases from Division Three apply a RAP 2.5(a)(3) analysis on whether one can bring a confrontation clause claim for the first time of appeal, in a recent unpublished decision on this issue, Division Three adopted the O'Cain analysis of waiver in State v. Kuneki, No. 34174-7-III, slip op. at 14, 2018 WL 834217 (Wash. Ct. App. Feb. 13, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdfr341747_unp.pdf. Division Three also previously held that failure to object constitutes waiver. See State v. Schroeder, 164 Wash. App. 164, 168, 262 P.3d 1237 (2011) (failure to object to admission of crime laboratory certificate constitutes waiver of right to confrontation).

Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

State v. Hieb, 107 Wash.2d 97, 104-12, 727 P.2d 239 (1986) (engaging in a harmless error analysis of a confrontation clause violation that the Court of Appeals allowed under RAP 2.5, but not engaging in a RAP 2.5 analysis).

The concurrence claims that a waiver analysis is "confusing" because it is "varied and unpredictable." Concurrence at 1196-97. However, our analysis states that without an objection there is no ruling to review on appeal, and so we do not review it. It does not get more straightforward and consistent. Further, if the concept of waiver were so confusing, varied, and unpredictable, we would not use it for any constitutional rights. As discussed in text, this is certainly not the case.