# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58423-9-II |
| Respondent, | |
| v. | |
| TRUNG NGHIA DANG, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Trung Nghia Dang appeals his conviction for leading organized crime, money laundering, unlawful manufacture of a controlled substance, and unlawful possession of a controlled substance with the intent to deliver. Dang argues the superior court improperly denied his motion to proceed as a self-represented litigant. Because the court did not abuse its discretion in denying Dang's motion to self-represent, we affirm.

FACTS[1]

I.    BACKGROUND

In November 2017, the Thurston County Narcotics Task Force received a tip that an individual residing in Rochester was conducting a marijuana[2] grow operation in violation of RCW

---

[1] A majority of the facts underlying this case are irrelevant as this appeal focuses solely on the court's denial of Dang's third motion to represent himself in October 2020. As such, we only briefly cover the events leading up to the charges, a majority of the pretrial proceedings, the trial, and sentencing.

[2] The legislature replaced "marijuana" with "cannabis" throughout the RCW in 2022. LAWS OF 2022, ch. 16, § 1. For consistency with the record in this case, which preexisted the statutory changes, we use "marijuana."

69.50.401.[3]  Upon further investigation, detectives linked other properties to the alleged criminal enterprise.  On March 15, 2018, law enforcement executed search warrants at the four properties, several of which were owned by Dang.  Dang and the other suspects were taken into custody.  Numerous marijuana plants, growing equipment, firearms, and high-valued items were recovered.  Dang was charged with several crimes related to drug manufacturing and distribution.

Throughout the pretrial proceedings, Dang submitted several motions to represent himself.  The first two were denied.  In both denials, the court reasoned that Dang failed to demonstrate a general understanding of the consequences associated with a criminal prosecution.  Dang was later deemed competent to stand trial.

II.    OCTOBER 29, 2020 HEARING

On August 24, 2020, Dang's counsel moved to withdraw from the case and permit Dang to represent himself.  The court held a hearing to consider the motion on October 29, 2020.  Throughout the hearing, which lasted more than an hour and a half, the court attempted to engage with Dang in a comprehensive colloquy to determine if he could proceed as a self-represented litigant.  The court addressed whether Dang had studied the law, if he had ever been involved in a prior case, whether he understood the charges, if he felt confident in representing himself, if he understood the possible consequences if he was found guilty, if he was familiar with the Washington Rules of Evidence and Criminal Procedure, and evaluated his educational background.  The court also emphasized to Dang that he would be held to the same standard as an attorney.

---

[3] RCW 69.50.401 has been amended two times since 2017, but the subsequent changes do not affect this matter.

Early on, Dang appeared to request standby counsel, stating that he was going to lead his defense and would need assistance only if things became too complicated. When assessing Dang's understanding of the possible consequences of the charges, however, the following exchange occurred:

> THE COURT: Can you tell me what your understanding is.
> MR. DANG: Well, that if my legal person is found guilty, I'm going to be imposed upon.
> THE COURT: What does that mean to you?
> . . . .
> MR. DANG: If the legal person is found guilty, you know, I'm sure it's going to be quite a lengthy sentence.
> THE COURT: But do you know what the potential sentence is?
> MR. DANG: [Unintelligible].
> THE COURT: I'm sorry. I didn't get that.
> MR. DANG: I—I—that's what I believe, in a criminal prosecution the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and to have—to have an assistance of counsel for his defense. So I don't really need an attorney. I just need assistance of counsel.
> THE COURT: What's the difference in your mind?
> MR. DANG: If it gets overwhelming. What's the difference in my mind?
> THE COURT: Yeah, the difference between having an attorney and having the assistance of counsel.
> MR. DANG: Well, somebody—one might be a litigator who know how to act in court, like Johnnie Cochran. Like, an attorney could be a real estate attorney that doesn't know how to act in court, not proficient at it. But the defense I need is someone that's proficient to act in court, somebody that—somebody that knows how to act in court. I need a litigator, not an attorney.

Rep. of Proc. (RP) (Oct. 29, 2020) at 13-15.

At another point in the hearing, the court inquired whether Dang understood the Washington Rules of Evidence and Criminal Procedure. Dang replied that he was familiar with the federal counterparts. Soon thereafter, Dang mentioned that he wanted to introduce exculpatory evidence demonstrating the State lacked standing in the case. Dang's comment prompted the following exchange:

3

THE COURT: Can you tell me why it is that you do not want an attorney to represent you in the case?

MR. DANG: Because it's my free will. I want control of my life because—because—yeah, because that attorney, he going to keep insisting that public law has jurisdiction over private land, which I don't believe it does and I'll prove it in court.

THE COURT: So you understand that—

. . . .

MR. DANG: I didn't expose the public to any danger. Everything was in private.

THE COURT: Do you understand that this Court is bound by the laws of the State of Washington and the court rules and that those will dictate the procedure and what happens at trial?

MR. DANG: Unfortunately, whatever happened did not have within the jurisdiction of the State of Washington. You're outside the scope of your authority. And I'll prove that in court. I'll prove that in Supreme Court. I'll show that they have no standing.

RP (Oct. 29, 2020) at 25-26. There were several other exchanges where Dang appeared confused about the court's jurisdiction over him and his conduct.

Dang was unresponsive to many of the court's questions. Instead of providing direct responses, Dang continued on about things such as his legal person being distinct from his physical person. One example includes:

THE COURT: Is it your understanding that you believe the Court cannot authorize you to be put in custody as a result of these charges if you were found guilty? Is that your understanding?

MR. DANG: Define "you." You keep saying you. You is a pronoun. You, the legal person? You, the man? Can you define you? You who?

THE COURT: The person I am speaking to.

MR. DANG: I have multiple. . . . What was that?

THE COURT: The person I am speaking to right now.

MR. DANG: And which one? I have multiple personalities. You is plural. Which—which you? You said the one that—the legal person or man?

THE COURT: Mr. Dang?

MR. DANG: Are you talking to I? Are you talking to I as a man or are you talking to I, the legal person?

THE COURT: Mr. Dang, can you answer my question?

4

MR. DANG:  This is my whole defense.  You understand?
THE COURT:  I'm afraid I don't.
MR. DANG:  An attorney can't do this.
THE COURT:  Indeed.

RP (Oct. 29, 2020) at 37-38.

Dang also repeatedly discussed how he wanted to represent himself so he could present a theory under common law.  Another exchange went as follows:

THE COURT:  Do you understand that you would be held to the same standard if you represented yourself?
MR. DANG:  Yes, as the legal person, yes, yes.  I understand the obligation of my legal person.  I understand the duty of my legal person.  I'm going to bring this over to the common law side of court, which [defense counsel] can't do.  No attorney can.  But this is common law land.  This is common law land.
THE COURT:  Mr. Dang?
MR. DANG:  So I'm going to bring it over to the common law side of the court, which you legal persons can't do.  And if you don't understand it, then I'll take it to the jury.
THE COURT:  Mr. Dang?
MR. DANG:  And I choose a jury of my people and they will understand what I am doing.  Like, you people can pretend that you don't know what I'm doing, but you understand that I am bringing it over to the common law side of the court.  My case, you know, and your case, are moving under two set of rules.  And your case, I want to stand—I want to stand into your case and then I'll represent my case and I'll explain to the jury nullification.

There's going to be two court going on at the same time.  You understand that?  And in my court, no attorney's going to appear.  Only man can testify in a common law court.  You understand common law proceedings?  Because this is common law land.  Okay.  You understand the law of the land that you're standing on?

RP (Oct. 29, 2020) at 44-46.  This exchange continued until the court had to mute Dang due to his unintelligible, disruptive responses.

The court entered a written order on November 24, 2020, denying defense counsel's motion to withdraw to allow Dang to proceed self-represented.  The court concluded that Dang's "request for self-representation [was] equivocal and made without a general understanding of the consequences."  Clerk's Papers (CP) at 658.  The court noted that Dang's request was equivocal

because he indicated "a willingness to represent himself but also a desire to be represented by different counsel." CP at 658. The court explained that Dang did not present a general understanding of the consequences because he "could not consistently articulate an understanding of what might happen to him if he [was] found guilty." CP at 658. The court emphasized that its decision was not based on Dang's meritless defense or "the potential disruption and inefficiency" that would ensue if Dang were to represent himself. CP at 658.

III. TRIAL AND SENTENCING

Due to the COVID-19 pandemic, Dang's trial was postponed to March 2023. The jury found Dang guilty of all charges with the exception of the firearm sentencing enhancement for the unlawful possession with intent to deliver conviction. The trial court sentenced Dang to a total of 67 months of confinement to be served concurrently.

Dang appeals.

ANALYSIS

I. MOTION FOR SELF-REPRESENTATION

Dang argues the court erred in denying his motion to proceed self-represented, violating his constitutional right to represent himself. We disagree.

The right to self-representation is expressly protected by the Washington Constitution. WASH. CONST. art. 1, § 22 ("In criminal prosecutions, the accused shall have the right to appear and defend in person."). The right is also implicitly protected by the Sixth Amendment. U.S. CONST. amend VI; *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."). Because this "right is so fundamental," it is afforded to the accused "despite its potentially detrimental impact on both

the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). Even in the absence of prejudice, improper "denial of the right to represent oneself requires reversal." *State v. Englund*, 186 Wn. App. 444, 455, 345 P.3d 859 (2015).

### A.    Standard of Review

"We review the denial of a defendant's request to proceed pro se for abuse of discretion." *State v. Burns*, 193 Wn.2d 190, 202, 438 P.3d 1183 (2019). A court abuses its discretion when a "decision is manifestly unreasonable," based "'on facts unsupported in the record,'" or "'was reached by applying the wrong legal standard.'" *Madsen*, 168 Wn.2d at 504 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). We afford "*great deference*" to a superior court's determination on a motion for self-representation. *Burns*, 193 Wn.2d at 202 (emphasis added). This is so because a superior court has "more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during the request." *Id.* As such, absent "an abuse of discretion, we will not reverse a . . . court's decision, 'even if we may have reached a different conclusion on de novo review.'" *Id.* (quoting *State v. Curry*, 191 Wn.2d 475, 486, 423 P.3d 179 (2018)).

### B.    Legal Principles

While fundamental, the right to self-representation is not absolute. *State v. Kolocotronis*, 73 Wn.2d 92, 98, 436 P.2d 774 (1968). Because the right to self-representation conflicts with the right of adequate representation, *see State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991), a court must "'indulge in every reasonable presumption' against a defendant's waiver of his or her right to counsel," *In re Detention of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)). In spite of this presumption, a court may deny a defendant's request for self-representation "only if the request is

'equivocal, untimely, involuntary, or made without a general understanding of the consequences.'" *Burns*, 193 Wn.2d at 203 (emphasis omitted) (quoting *Madsen*, 168 Wn.2d at 505).

Courts engage in a "multistep process" when "evaluating a defendant's request to go pro se." *Burns*, 193 Wn.2d at 202-03. First, a court must determine if the "request is unequivocal and timely." *Id.* at 203. If the request is neither equivocal or untimely, a court must evaluate whether "the request is knowing, voluntary, and intelligent." *Id.* This determination is accomplished through a colloquy with the defendant on the record. *Id.* During this colloquy, a court "should generally include a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his [or her] case." *Id.* Additionally, a court may also consider the defendant's "education, experience with the justice system, mental health, . . . competency. . . , behavior, intonation, and willingness to cooperate with the court." *Id.* Critically, so long as the court conducts "an adequate inquiry into a defendant's request and there is a factual basis for the court's finding," we will not disturb their decision on appeal. *Id.*

There are several improper bases for denying a motion for self-representation. For example, a court may not deny a motion for self-representation based on the grounds that proceeding self-represented would negatively affect the defendant. *Madsen*, 168 Wn.2d at 505. Relatedly, a court cannot deny such request out of concern it would result in courtroom proceedings being "less efficient and orderly than if the defendant were represented by counsel." *Id.* Also, a court cannot properly deny a defendant's request based on his or her competency to stand trial. *Id.* It is important to note, however, that the competency to stand trial is different than the competency to waive counsel. *See In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 661-62, 260 P.3d 874 (2011).

Here, the court denied Dang's motion to proceed self-represented because his request was equivocal and failed to demonstrate a general understanding of the consequences of the criminal proceeding. There is nothing in the record suggesting that the court abused its discretion.[4] First, there is ample evidence in the record supporting the conclusion that Dang's request was equivocal. Throughout the October 29, 2020 hearing, Dang made confusing remarks about whether he was requesting to proceed self-represented. For example, he claimed that he wanted standby counsel and was going to lead his case, but then contradicted himself by stating he was pursuing "competent counsel" at several other junctures. *See* RP (Oct. 29, 2020) at 11, 12, 18, 44. Dang also claimed that he needed "somebody that's more of a litigator, not an attorney." RP (Oct. 29, 2020) at 15. Based on numerous equivocations in the record, we conclude that Dang's request was equivocal.

Even if Dang's request were unequivocal, his remarks throughout the hearing demonstrate fundamental misunderstandings about the general consequences of the proceeding. Accordingly, we are unconvinced that Dang's request was voluntary, knowingly, and intelligent. The court engaged in a comprehensive colloquy[5] with Dang at the October 29, 2020 hearing. In a majority of the exchanges, Dang was unresponsive, espousing statements that were wholly unrelated and without merit. This case is most similar to *Burns*, where the defendant claimed they understood what the court was saying throughout the colloquy, but the defendant's "other remarks indicate[d]

---

[4] Because Dang only challenges the third denial, we consider only the portions of the record related to that request.

[5] The court covered Dang's familiarity with the law, his potential involvement in any prior case (civil or criminal), educational background, familiarity with the charges, ability to adequately represent himself, the charges he faced, the possible consequences if he were found guilty, his familiarity with the Washington Rules of Evidence and Criminal Procedure, and the fact that he would be held to the same standard as an attorney.

the exact opposite." 193 Wn.2d at 204. As in *Burns*, here, the court engaged in an "extensive and comprehensive" colloquy that supported the conclusion that Dang "did not understand the nature or seriousness of the charges against him. *Id.* Because there is ample evidence in the record to support the court's conclusion, we decline to disturb its decision on appeal.

We conclude that Dang's request for self-representation was neither unequivocal or made with a general understanding of the consequences. Therefore, the court did not abuse its discretion.

## CONCLUSION

Accordingly, we affirm Dang's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Maxa, J.

_____
Lee, J.