IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59341-6-II |
| Respondent, | |
| v. | |
| KENNETH DEANE LINDELL, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Kenneth Lindell appeals his conviction of second degree organized retail theft. One week before trial, Lindell requested to represent himself. After a colloquy with the trial court, the court granted his request. Lindell subsequently objected to a continuance proposed by the State.

We hold that (1) the trial court did not err in granting Lindell's request to represent himself, and (2) Lindell's claims in a statement of additional grounds (SAG) are meritless or not addressable on direct appeal.

Accordingly, we affirm Lindell's conviction of second degree organized retail theft.

FACTS

The State charged Lindell with second degree organized retail theft for a series of thefts at a Bonney Lake Home Depot between April and May of 2021.[1]  Lindell allegedly stole approximately $4,475 of items.  The trial ultimately was scheduled for February 6, 2024.

On January 30, 2024, one week before trial, Lindell asked for the trial court to allow him to represent himself.  The following colloquy occurred:

THE COURT:  Have you ever studied law?

[LINDELL]:  I have began to brush up and read on law.  I do understand the constitutional rights that I have and the ones that I can give up if I took a plea.  So I am getting to know it a lot better today.  And so I'd have to say that I will continue and get better at it as I go.

THE COURT:  Have you ever represented yourself in any other criminal case?

[LINDELL]:  Yes, I have, and one judge said he thought that I might want to be an attorney one day.

THE COURT:  [Explains charges against Lindell.]  Is that your understanding as to what you're charged with?
. . . .

[LINDELL]:  I do understand that's what I'm being charged with.
. . . .

THE COURT:  . . . Mr. Lindell, if you're convicted of all of these charges, you're probably looking at about five years in prison, approximately.  Do you understand that?

[LINDELL]:  I do, Your Honor.
. . . .

---

[1] The record suggests that the State also charged Lindell with other crimes in which Lindell also sought to represent himself.  The trial court's colloquy with Lindell about self-representation appears to apply to all of the charges.  Only the second degree organized retail theft conviction is at issue in this appeal.

THE COURT:  Do you understand that if you represent yourself, you're on your own?  The judge isn't going to help you.  The prosecutor's not going to help you.  You might have some objections but not know how to articulate them.  You may have some difficulty getting evidence admitted or calling witnesses.  And that's just entirely --

[LINDELL]:  Understood, Your Honor.

THE COURT:  -- up to you.

[LINDELL]:  Yes, sir.
. . . .

THE COURT:  And are you familiar with the Rules of Evidence?

[LINDELL]:  I will be when that time comes.

THE COURT:  Well, that time is scheduled to come on February 6th.

[LINDELL]:  And I'm ready for trial, sir.

THE COURT:  Do you understand that the Rules of Evidence govern what evidence may be considered by the jury at trial?

[LINDELL]:  Yes, I do, Your Honor.

THE COURT:  Do you understand that you're required to follow those rules?

[LINDELL]:  I do, as well as the Court, sir.

THE COURT:  Are you familiar with the Rules of Criminal Procedure?

[LINDELL]:  I am beginning to become familiar with the Rules of Criminal Procedure, yes.

THE COURT:  Do you understand that these rules govern the way in which a criminal case is tried in this Court?

[LINDELL]: And that goes vice versa, that the State's also governed by those Rules of Procedures also. If they violate those, they have to answer to those also, sir, especially critical errors at the trial. This is a critical point in trial, so -- every period is a critical point.

THE COURT: Do you understand that if you decide to take the witness stand, you can't just get up and tell your story; you have to ask yourself questions so that the other side can object and the Court can rule on objections?

[LINDELL]: I do, Your Honor.
. . . .

THE COURT: Why do you not want an attorney?

[LINDELL]: Because I don't believe he's -- I think he's barred from the basic constitution and my rights underneath compulsion, Your Honor. I do know what that means. And there's [sic] certain enumerations that actually I have major rights as a citizen that possibly have been disparaged on by the Sixth Amendment today. So we're going to work on that as we go.

THE COURT: I don't quite track what you're saying.
. . . .

THE COURT: Why do you not want an attorney?

[LINDELL]: Because I want to represent myself and my own constitution.

THE COURT: Do you understand that the constitution that we're going to be working with is the United States Constitution as it's written?

[LINDELL]: Yes. And the federal United States Constitution is first and final, sir.
. . . .

THE COURT: Do you understand that if you proceed and you represent yourself and you don't talk -- really present a defense, you don't subpoena witnesses, you're not successful at getting your evidence admitted, you're not able to successfully object to the State's evidence, you're not going to be able to get your conviction reversed because you didn't obtain effective assistance of counsel? In other words, if you represent yourself and you do a bad job at trial, you don't have an ineffective assistance of counsel claim on appeal. Do you understand that?

4

[LINDELL]: I do. One of my favorite statements in the Constitution is Benjamin Franklin. He did say to unlearn the things taught, Your Honor, to learn the things we ought, one of my favorite sayings.

THE COURT: I'm going to just tell you right now that you're going to be far better represented by a trained attorney. You're not familiar with the law. You're not familiar with the Rules of Criminal Procedure. You're not familiar with the Rules of Evidence. I'm going to strongly urge you not to represent yourself. But it's your decision, and you do have a constitutional right to represent yourself if you so choose. Understanding the penalty that you might suffer if you're found guilty and in light of the difficulties of representing yourself, is it still your desire to represent yourself and to give up being represented by an attorney?

[LINDELL]: Yes, it is, Your Honor.

THE COURT: Is this decision entirely voluntary on your part?

[LINDELL]: For the first time in my life, I can say it is voluntary, sir.

THE COURT: I find that you've knowingly, voluntarily waived your right to counsel. I'm going to allow you to represent yourself.

Rep. of Proc. (RP) (Jan. 30, 2024) at 5-12.

Because trial was one week away, the prosecutor requested a continuance so that Lindell could file motions and review discovery. Lindell objected to a continuance and made statements about his speedy trial right. The prosecutor stated, "I have no doubt Mr. Lindell's heart in wanting to approach this. He's not going to have enough time to prepare a defense for himself on the 6th." RP (Jan. 30, 2024) at 16. The trial court denied the motion for a continuance because the only basis for a continuance was Lindell's preparedness, and Lindell wanted to proceed to trial.

Before jury selection on the first day of trial, the prosecutor told the court that Lindell only received an investigator that day. Lindell stated that he was going to represent himself, "be

5

responsible today for [his] own actions," and that he did not want a continuance. RP (Feb. 6, 2024) at 9. Lindell confirmed that he had received discovery.

The prosecutor reiterated that a continuance was in the interest of justice. Lindell then argued that a speedy trial "is a form of administration of justice" and that he wished to go to trial. RP (Feb. 6, 2024) at 18. The trial court stated that "[a] lot of what [Lindell]'s raised has to do with the other two cases, but he is insistent that he go forward on this trial despite the State's concerns." RP (Feb. 6, 2024) at 18. The prosecutor also raised the issue of Lindell's preparedness before jury selection, but Lindell objected to any continuance. The trial court denied a continuance and the parties went to trial.

The jury convicted Lindell of second degree organized retail theft. Lindell appeals his conviction.

## ANALYSIS

### A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington constitution guarantee a criminal defendant the right to assistance of counsel. "The same constitutional provisions also provide a criminal defendant with a right to self-representation." *State v. Howard*, 1 Wn. App. 2d 420, 424, 405 P.3d 1039 (2017). "[A] defendant must unequivocally request to proceed pro se before he or she will be permitted to do so." *State v. Curry*, 191 Wn.2d 475, 482-83, 423 P.3d 179 (2018). A trial court must apply every reasonable presumption against a waiver of the right to counsel. *See id.* at 487.

First, we determine whether a request is "unequivocal and timely." *State v. Burns*, 193 Wn.2d 190, 203, 438 P.3d 1183 (2019). We "focus on the nature of the request itself – if, when, and how the defendant made a request for self-representation – not on the motivation or purpose

behind the request." *Curry*, 191 Wn.2d at 486-87. When a request for self-representation is made shortly before trial, " 'the existence of the right [to self-representation] depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter.' " *State v. Madsen*, 168 Wn.2d 496, 508, 229 P.3d 714 (2010) (quoting *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)).

Second, if a request for self-representation is unequivocal and timely, "a trial court must then determine if the request is knowing, voluntary, and intelligent" through a colloquy with the defendant on the record. *Burns*, 193 Wn.2d at 203. This includes a discussion of "the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case." *Id.* A trial court also may consider the defendant's "education, experience with the justice system, mental health, and competency." *Id.* "[T]rial courts cannot deny pro se status simply because a lay person lacks the training and experience of a lawyer." *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 669, 260 P.3d 874 (2011).

We review the decision to grant or deny a defendant's request for self-representation for an abuse of discretion. *Curry*, 191 Wn.2d at 484. An abuse of discretion occurs when a decision is "manifestly unreasonable, based on untenable grounds, or based on an erroneous view of the law." *Howard*, 1 Wn. App. 2d at 425. "We give great deference to the trial court's discretion because the trial court is in a favorable position to the appellate courts in evaluating a request to proceed pro se." *Burns*, 193 Wn.2d at 202. "The burden of proof is on the defendant to show that the waiver of the right to counsel was not knowing and intelligent." *Howard*, 1 Wn. App. 2d at 426.

7

B.       REQUEST FOR SELF-REPRESENTATION

Lindell argues that the trial court erred in granting his request to represent himself. He claims that his request was neither timely nor knowing, voluntary, and intelligent.[2] We disagree.

1.       Timeliness of Waiver of Right to Counsel

Lindell argues that his waiver of the right to counsel was not timely because it was made one week before trial. We disagree.

Because Lindell's request came a week before trial, we give great deference to the trial court's decision. *Madsen*, 168 Wn.2d at 508. Although Lindell did not receive an investigator until the first day of trial, he repeatedly objected to any continuance to allow him to be more prepared for trial. Lindell also confirmed that he had received discovery in the case. The trial court acknowledged that the State was concerned about Lindell's preparedness, but the court carefully balanced that interest against Lindell's continued objection to any continuance. Therefore, it was not manifestly unreasonable for the trial court to grant Lindell's motion one week before trial.

Accordingly, we hold that the trial court did not abuse its discretion in granting Lindell's request to represent himself even though it was made a week before trial.

2.       Knowing, Voluntary, and Intelligent Waiver of Right to Counsel

Lindell argues that his waiver of the right to counsel was not knowing, voluntary, or intelligent. We disagree.

Here, the trial court had a lengthy colloquy with Lindell to determine whether his waiver of the right to counsel was knowing, voluntary, and intelligent. Lindell clearly stated that he knew the charges against him and the potential penalty if convicted. The court specifically asked

---

[2] Lindell does not argue that his waiver of the right to counsel was equivocal.

if Lindell understood that the rules of evidence and criminal procedure would apply to his trial and Lindell stated that he did. Therefore, the court's colloquy shows that Lindell understood the nature of the charges against him, the penalty if convicted, and that he would have to participate in his trial under the same legal rules as an attorney. *See Burns*, 193 Wn.2d at 203. This shows that Lindell's waiver was knowing, intelligent, and voluntary.

Lindell argues that his responses to the trial court were "nonsensical" and "non-responsive" such that Lindell did not "understand the prices, the rules, or the consequences sufficiently to make a knowing, voluntary, and intelligent waiver." Br. of Appellant at 19-21. This argument fails for two reasons.

First, Lindell's statements acknowledging that he understood the consequences and rules of representing himself were unequivocal. Any nonsensical or nonresponsive answer to a question reflected Lindell's understanding of the application of various legal rules to his trial, not his understanding that the rules applied to him. And a waiver of the right to counsel still is valid even if a "lay person lacks the training and experience of a lawyer." *Rhome*, 172 Wn.2d at 669. Lindell clearly understood his constitutional rights and that there were evidentiary rules and courtroom procedures, even if he referenced a somewhat nonresponsive quotation from Benjamin Franklin during his colloquy with the trial court. Therefore, Lindell's lack of understanding about how the rules of evidence or criminal procedure apply in trial is insufficient to show that his waiver of the right to counsel was not knowing, voluntary, or intelligent.

Second, we give great deference to the trial court's discretion when evaluating a request for self-representation. *Burns*, 193 Wn.2d at 202. Here, the trial court was in the best position to determine whether Lindell sufficiently understood what it meant for him to waive the right to counsel. And as determined above, Lindell's statements affirmatively acknowledged his

understanding of self-representation. Nothing in the record shows that the trial court's decision was "manifestly unreasonable" or "based on untenable grounds." *Howard*, 1 Wn. App. 2d at 246.

Lindell argues that *Burns*, 193 Wn.2d 190, supports his argument that his statements were nonsensical and could not constitute a waiver. In *Burns*, the trial court denied a defendant's motion to represent himself after he repeatedly discussed a "contract" and "corporation" with respect to the State's criminal charges, even though he stated that he understood what he was doing. *Id.* at 197-98. The Supreme Court affirmed the trial court's denial of Burns's motion to represent himself, noting that even though he acknowledged what he was doing, "his other remarks indicate[d] the exact opposite." *Id.* at 204. The Supreme Court held that this indicated that he did not understand the nature of the charges against him. *Id.* at 205.

*Burns* is distinguishable. Initially, the court in *Burns* reviewed the denial of a defendant's motion to represent themself. Here, the trial court granted the motion. In addition, unlike in *Burns*, Lindell made repeated statements acknowledging that he understood the nature and consequences of proceeding pro se. Although Lindell did reference Benjamin Franklin, this was not entirely unrelated to the colloquy with the trial court because the court had just asked Lindell whether he understood his constitutional rights. And the trial court, viewing Lindell's statements and demeanor, determined that Lindell still knowingly, voluntarily, and intelligently waived his right to counsel.

Accordingly, we hold that the trial court did not abuse its discretion in ruling that Lindell's waiver of his right to counsel was knowing, voluntary, and intelligent.

C.    SAG Claims

Lindell raises several claims in his SAG.  We conclude that they are without merit or not addressable on direct appeal.

1.    Prosecutorial Misconduct

Lindell asserts that the prosecutor committed misconduct during closing argument and that the trial court's curative instruction was insufficient.  We disagree.

During the prosecutor's rebuttal in closing argument, the prosecutor made the following statement: "The State would just like to point out that Mr. Lindell himself was essentially one of the State's best witnesses.  He said repeated during witness testimony that that was him – " RP (Feb. 8, 2024) at 369.  At this point Lindell objected.  The trial court sustained the objection and instructed the jury to disregard the statement.  Lindell argues that the prosecutor's statement was improper and violated his right to a fair trial.

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial.  *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020).  To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury verdict.  *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021).

Even assuming without deciding that the prosecutor's remark was improper, in context the remark was not so harmful as to be prejudicial.  Witnesses throughout the trial identified Lindell as the person who stole property using security camera footage.  In addition, the trial court sustained Lindell's objection, and the court's curative instruction was sufficient to instruct the jury to disregard the statement.  The comment likely made little difference in the jury's

verdict given the overwhelming evidence of Lindell's guilt. Therefore, Lindell cannot show prejudice.

Accordingly, we hold that Lindell's prosecutorial misconduct claim fails.

2.   Right to Present a Defense and Call Witnesses

Lindell asserts that the trial court violated his right to present a defense and a fair trial when it did not allow him to call or subpoena certain witnesses. We disagree.

The record does not support Lindell's arguments. First, Lindell was permitted to call witnesses, and the trial court asked who he wished to call. But Lindell did not prepare any witness testimony or request that the court require any witnesses to appear. Lindell argues that his right to interview a witness in advance of trial was violated, but his own conduct resulted in him not having enough time to adequately prepare a meaningful defense. The State requested a continuance to allow Lindell to better prepare, but Lindell repeatedly objected.

Lindell also obliquely references the confrontation clause with respect to his argument about interviewing witnesses. But Lindell's confrontation clause rights are not implicated because he had the opportunity to cross-examine all of the State's witnesses. Lindell merely objects to the State not calling all of the potential witnesses on their witness list. Therefore, this argument fails.

Accordingly, we reject Lindell's arguments about the ability to call witnesses and his right to present a defense.

3.   Speedy Trial Right

Lindell asserts that his right to a speedy trial was violated because he allegedly waited over 600 days between his arraignment and trial. We decline to address this claim.

12

Lindell's speedy trial right claim relies on matters outside the record. Although the record shows that Lindell was arraigned in August 2022 and the trial did not occur until February 2024, nothing in the record explains the delay. The trial court may have granted necessary continuances, and Lindell himself may have requested continuances. As a result, we cannot consider this argument on direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This assertion is more properly raised in a personal restraint petition. *Id.*

CONCLUSION

We affirm Lindell's conviction of second degree organized retail theft.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
VELJACIC, J.